**Wytheville.**

BRISTOL IRON & STEEL CO. V. THOMAS AND OTHERS.

JULY 16, 1896.

Absent, Harrison, J., and Buchanan, J.*

1. COMMISSIONERS REPORT—*Failure of trial Court to pass on exceptions to—Harmless error.*—The failure of the trial court to pass upon exceptions to the report of a commissioner in chancery, which, had it considered them, should have been overruled, is harmless error.

2. CHANCERY PRACTICE—*Bill to Wind up Insolvent Corporation—Parties.*—Upon a bill filed by a creditor of an insolvent corporation solely for the purpose of winding up its affairs and of subjecting its property and franchises to the payment of its debts, the shareholders are neither necessary nor proper parties, if no relief is sought against them.  They are represented by the company.

3. MECHANICS' LIEN—*Assignment of Claim before Lien Perfected—Rights of Assignee.*—The right to perfect an inchoate mechanics' lien, existing in a contractor under section 2475 of the Code, passes by his general assignment for the benefit of his creditors to his assignee, and the assignee, on completion of the work, may take the necessary steps to perfect the lien, although the statute is silent on the subject.

Appeal from a decree of the Hustings Court of the city of Radford, pronounced December 19, 1894, in sundry chancery suits heard together in all of which the appellant was a defendant, and in one of which the appellee, Thomas, was the complainant.

*Affirmed.*

The opinion states the case.

---

*Judge Buchanan had been counsel for some of the parties in the Hustings Court.

*Fulkerson, Page & Hurt* and *R. A. Ayers,* for the Bristol Iron
& Steel Co., appellant.

*Watts, Robertson & Robertson,* for Flat Top Coal & Coke
Ass'n, appellant.

*Charles R. Vance,* for Thomas, Assignee, appellee.

*H. G. Peters* and *J. H. Wood,* for other appellees.

KEITH, P., delivered the opinion of the court.

James P. Withrow entered into a contract with the Bristol
Iron and Steel Company for the construction of a complete
blast furnace plant in accordance with certain plans and spe-
cifications.   When the work had been partially completed,
Withrow becoming embarrassed, made a general assignment
for the benefit of his creditors, including therein the contract
with the Steel and Iron Company, and whatever might be
due him from the said company for work performed and
supplies and material already furnished.   After the assign-
ment, Thomas, the assignee, went on with the assent of the
Bristol Iron and Steel Company to complete the work, and in
order to secure what was due him filed a mechanics' lien,
complying with all the provisions of the statute law applicable
in such cases.   In due time he brought a suit in the Hustings
Court of the city of Bristol, which was afterwards transferred
to the Hustings Court of Radford city, to enforce the lien
thus acquired.   Numerous other lien creditors of the Bristol
Iron and Steel Company filed bills also to enforce their de-
mand.   The defendant company answered, the several suits
were brought on to be heard together, and a decree was en-
tered for an account of all liens upon the property and fran-
chises of the defendant corporation.   Upon the coming in of
the report of the commissioner, exceptions were taken by the

Bristol Iron and Steel Company, but the court, without passing upon them, recommitted the report to Commissioner Honaker, who returned his second report on the 2nd day of December, 1893. To this report numerous exceptions were filed, which the court by its decree disposed of, and with respect to them no question is here made except as to those taken by the Bristol Iron and Steel Company, all of which were overruled, and the exceptions of the Flat Top Coal and Coke Association, which will be separately considered. The court having by its decree disposed of the exceptions to the master's report, entered a decree appointing commissioners of sale and directing them to sell the property of the Bristol Iron and Steel Company, unless it paid all the creditors whose debts had been reported the respective amounts due them within 120 days from the rising of the court. Thereupon the Bristol Iron and Steel Company applied for and obtained an appeal and supersedeas from one of the judges of this court.

The first error assigned is that the court failed to pass upon the exceptions to the first report of Commissioner Honaker. None of the exceptions to either the first or second report of Commissioner Honaker on the part of the defendant corporation are well taken, and as none of them present any question of interest there is no occasion to discuss them at length. Had the court below considered them they should have been overruled, and its failure to pass upon them is harmless error.

The next assignment of error is to the action of the court in decreeing the sale of petitioner's real estate in default of the payment of the unsecured debts of the Company.

It is contended that the real estate of a corporation, like that of a natural person, may be subjected to sale for the enforcement of liens thereon but cannot be sold in order to satisfy the claims of creditors who have not acquired liens. The petitioner, however, admits that the affairs of an insol-

vent corporation may be settled and its property be sold for the satisfaction of its debts of every description, whether secured by liens or not, but insists that it must be upon a bill filed for a settlement of its affairs in which its insolvency is made to appear. It is admitted in the petition for appeal that Cadwallader & Co. in their petition in that suit did aver the insolvency of the corporation, and prayed that the court should administer its property as a trust fund for the benefit of all creditors, and that they sued for the benefit of themselves and all other creditors who might choose to come in and contribute to the expense of the litigation. The appellant insists, however, that this petition of Cadwallader & Co. was never treated as an amended bill, and that even if it were considered as a bill to distribute the assets of an insolvent corporation it is defective, because the stockholders are necessary parties to such a bill, and were not made parties to any of the causes heard together in the decree appealed from.

The record before us omits a very large part of the pleadings and proofs constituting the several records in the Hustings Court of the city of Radford, but it may be safely assumed from the petition of the appellants, just cited, that the averments of Cadwallader & Co. in their petition were ample to call into exercise the jurisdiction of the court and require it to take control of the property of the defendant corporation, and to administer it as a trust fund for the benefit of all its creditors.

To such a suit the stockholders are not necessary parties. An incorporated company is an entity wholly separate and distinct from the individual stockholders who compose it. There are cases in which it is proper to make shareholders parties, but in a case such as the one before us it was neither necessary nor proper to implead them. The only object sought in the pleadings, so far as can be discovered from the incomplete record before us, was to subject the corporate

property and franchises. No relief was sought against shareholders, and for all the purposes of this litigation they were represented by the company of which they are members, which is a party defendant.

We do not perceive that in the decree complained of there is any reversible error to the prejudice of the appellant, the Bristol Iron and Steel Company.

After the appeal had been granted upon the petition of the Bristol Iron and Steel Company the Flat Top Coal and Coke Association presented its petition praying for an appeal and supersedeas to the decree of the Hustings Court of the city of Radford, assigning as error to its prejudice, that priority was given to the lien of Alexander Thomas, assignee of James P. Withrow.

Thomas, as we have seen, claims as the assignee of Withrow, who, having entered into a contract with the defendant corporation for the construction of a blast furnace, assigned his contract and what was due under it to Thomas, who proceeded to carry it out, and to perfect the lien. It is not denied that Withrow had a contract for the work; that it was properly the subject of a mechanics' lien under section 2475 of the Code of Virginia; that he had done work and furnished material in accordance with it; and that if he had himself completed the structure he would have been entitled to the benefit of the lien, but it is claimed that this is a personal right, and that the inchoate lien, created by section 2475, cannot be assigned so as to empower the assignee to perfect the lien as provided in section 2476. It is admitted that if the work had been completed and the lien for its security had been perfected, the perfected lien could have been assigned so as to vest the assignee with all the rights of the assignor.

The object of the law in creating liens in favor of mechanics was to secure to a deserving class of men the fruits of their labor. The statute upon the subject is remedial in its nature, and while courts require a strict compliance with

all that the statute prescribes for the completion or perfecting of the lien, and cannot by construction supply any failure or omission upon the part of the claimant, and to this extent may be said to place a strict construction upon the statute, as being an innovation upon the common law, yet when the mechanic has done all that it is necessary for him to do, has performed the work or supplied the material, and perfected his lien therefor in the prescribed mode, the duty of the courts is to see that those whom the law intended to protect shall enjoy the advantages which it confers.

There seems to be conflict in the decisions as to what shall be the policy of the law applicable to these liens.

As is said in Phillips on Mechanics' Liens, sec. 16: " Adjudications will be found declaring it to be against the genius of government to make distinctions between its citizens, or to prefer one class by granting them special privileges in derogation of the rules of common law, and consequently these laws should be construed strictly; there are others equally numerous to the effect that correct policy dictates the fostering of this remedy for purposes of improvement of the country, and the protection of often unlettered men, and that a free interpretation should be given them in favor of the mechanic. It will be found, however, on a comparative examination, that courts have, with scarcely an exception, adopted either one or the other line of decisions, according as the statutes of the particular State were themselves equitable and just. If they bore with unnecessary severity upon others in favor of the mechanic, and palpable injustice resulted, they have uniformly declared they should not be aided by construction, and a strict interpretation should be placed upon the laws. If, on the other hand, they have secured the laborer the result of his toil and capital, with a due regard to the rights of all, constant expressions are to be found in the reported cases, declaring they should be favored."

Our law as it now stands cannot be justly criticised as unduly favoring those for whose benefit it was enacted. It merely serves to secure to the mechanic and laborer the result of his toil and capital, and, while doing justice to them, inflicts no injustice upon any, and should therefore be fairly, if not liberally, interpreted.

That the contract under which the work is done and the right to demand the sums due upon it may be assigned, admits of no question; and that the assignment of a debt or contract ordinarily carries with it every lien which exists for its security will not be denied. That to deny to the holder of the inchoate mechanics' lien the right to assign the lien given by section 2475, would greatly diminish the value of the benefit conferred upon those enumerated in that section, is obvious. It must frequently happen that the artisan, builder, mechanic, or lumber dealer, dies before the completion of the work upon which his labor has been performed, or to the construction of which he has furnished materials, or that from some other cause he is, without fault upon his part, unable to complete that which he has begun, and entitle himself to perfect the imperfect lien by doing what is prescribed in the succeeding section. To hold that he cannot impart to his assignee the faculty and power of perfecting the lien, would be, in all such cases, to rob him of the fruit of his toil by depriving him of the only mode by which it could be secured. If he is incapable of conferring upon another, by his voluntary act of assignment, the power of perfecting the inchoate lien, the executor and administrator, in the event of his death, would be equally impotent.

In the case before us the assignment was for the benefit of creditors. The assignee is clothed with the duty of collecting the assets committed to his care, and applying them in accordance with the terms of his trust. The value of this claim is wholly dependent upon the lien by which it is

secured, and we are asked to declare that by the very act of assignment for the benefit of his creditors, by the very effort which the debtor makes to comply with his engagements, the value of the subject assigned is destroyed. He was placed in this position: He could not complete that which he had undertaken, and he himself could therefore not perfect the lien, and the construction asked for denies to him the right to clothe any one else with the power of doing it for him, which would result in the case of death or misfortune, or any unavoidable cause which prevented the completion of the contract in the loss to himself, his family, and his creditors of all that had been done under his contract.

It is admitted in argument, and has been decided by this court, that the lien when perfected follows the assignment of the debt which it secures. See *Iaege* v. *Boissieux,* 15 Gratt. 83.

As a general rule, under our law any contractual right is assignable, and the assignment carries with it all liens given for its security. As a rule a man may authorize another to do for him whatever he himself may lawfully do. Sections 2475 and 2476 are silent upon the right to make an assignment. The exact question is, for the first time, presented to this court for decision, and we feel free to adopt that construction which commends itself to us as reasonable and just.

We are of opinion that Thomas, as assignee of James P. Withrow, was entitled to perfect the inchoate lien which existed for the benefit of his assignor; and that there is no error in the decree complained of, which must be affirmed.

*Affirmed.*