# Richmond

## CARTER v. HOOK

### November 12, 1914.

1. BOUNDARIES—*Adequate Description—Deeds—Contracts.*—A description of land is adequate when it is such that any person of reasonable intelligence, whether a surveyor or not, would have no difficulty in definitely locating all its boundaries.

2. CONTRACTS—*Mutuality—Options.*—When it was intended that a contract should, in its express terms, be binding upon one of the parties alone, it may be specifically enforced against that party, although the remedy cannot be granted to him against the promisee. Option contracts are in reality conditional agreements. Upon the happening of the condition, that is, upon making the request, giving the assent, or declaring the option, they become absolute and in many instances mutual in their obligation. Such contracts are not void for want of mutuality.

3. CONTRACTS — *Options — Consideration — Withdrawal of Option.*— When an option is accepted, it becomes an executory contract for the sale of the property with mutuality of obligation and remedy. The acceptance of the option in the manner and within the time specified is sufficient to bind both parties, and removes any objection to the enforcement of the agreement based thereon for want of consideration. If the option is not supported by a sufficient consideration, the offer is a mere gratuity which may be withdrawn at any time before its acceptance. But if an option unsupported by a consideration is accepted before it expires or is withdrawn, a binding contract is thus formed. If the offer to sell is supported by a sufficient consideration, it cannot be withdrawn prior to the expiration of the time specified.

4. SPECIFIC PERFORMANCE—*Contract not Fair, Equal and Just—Loan Accompanied by Option to Buy at Inadequate Price—Usury.*— Where a loan is made upon condition that the borrower shall give to the lender an option to purchase his land at a price far below its value, the acceptance of the option is not a fair, equal and just contract, but is usurious, and will not be specifically enforced in equity.

Appeal from a decree of the Circuit Court of Alleghany county. Decree for the defendant. Complainant appeals.

*Affirmed.*

The opinion states the case.

*W. E. Allen* and *O. B. Harvey,* for the appellant.

*George A. Revercomb* and *John T. Delaney,* for the appellee.

KEITH, P., delivered the opinion of the court.

This controversy grows out of a bill for specific performance, filed by E. L. Carter against S. E. Hook in the Circuit Court of Alleghany county, in which he states that he entered into a contract with Hook on February 20, 1909, by which the defendant agreed to sell him for the sum of $3,600 a certain tract of land in Alleghany county, Virginia, which was composed of more than one parcel. The bill goes on to describe the land in the terms of the contract, which need not be set forth at large in this opinion. Continuing, the plaintiff avers, that "under the terms of said contract your complainant had a right to purchase said land on or before one year from the date of said contract, upon the tender to the party of the first part of the said option price of $3,600, and in the event that your complainant agreed to purchase said property within said twelve months, the defendant agreed to execute to him a sufficient deed, with general warranty of title, for said land;" that it was further provided in the contract that complainant loaned to the defendant on the date of said contract the sum of $1,100, secured by a deed of trust on the land aforesaid and other lands belonging to the said defendant, and further

provided that the sum of $1,100 and all interest that had accrued thereon might be deducted from the said sum of $3,600 to be paid for the land aforesaid, and further provided that if the option to purchase was exercised within one year from the date of the said contract, the possession of the said land, including all crops thereon, should remain in the defendant until one year from the date of said contract. The bill then avers that some time before the twelve months given him in said option contract complainant notified the said defendant that he desired to purchase said property, and tendered him the $3,600 which he was to pay therefor, less the $1,100, with interest thereon to that date; and that the defendant promised him that he would execute the deed in accordance with his contract, but up to the time of the institution of this suit has failed and refused to make such deed. The bill alleges that complainant has complied with every provision of said option contract, and that he knows of no reason why the defendant refused and neglected to comply with his part of the contract.

The bill further avers that at the time the contract was entered into $3,600 was all that the defendant asked, and that it was a fair price for the land. It further appears from the bill that there was another deed of trust in addition to that of the complainant upon the land, but the complainant offered to loan the defendant a sufficient sum of money in addition to the $3,600 to pay off this deed of trust and release the lien on the land, and he is still willing to lend the defendant such sum of money, on any reasonable length of time, so that he may be in a position to release the lien of the deed of trust on that portion of his land which he agreed to sell to complainant as aforesaid.

The prayer of the bill is that a commissioner may be appointed for the purpose of making a proper deed of

conveyance, after payment into court of the said $3,600 less $1,100 with proper interest, and that the court will grant such other and general relief as the case may require.

Hook filed his demurrer and answer to this bill, and for grounds of demurrer states that the description of the land in the bill mentioned is so vague, indefinite and uncertain that it cannot be accurately and positively located, and that, therefore, the alleged contract is not susceptible of specific enforcement; that the alleged option contract not only fails to show upon its face that any consideration deemed valuable in law was received by respondent for his execution thereof, but that it affirmatively appears from the same that it was executed without any good, legal and valuable consideration to respondent, and that, therefore, the same is *nudum pactum;* that the alleged option contract shows upon its face that respondent had no right to enforce it, and that, therefore, there is a lack of mutuality and the alleged contract is not enforceable by the plaintiff; and that, as appears from the said bill of complaint, the plaintiff has a full, adequate and complete remedy at law.

Further answering defendant avers that the tract embraced in the option contract contains about three hundred acres, which was worth, at the very least, at the date of the contract between $7,500 and $9.000, and that the price of $3,600 placed upon it in the alleged option contract is grossly and unconscionably inadequate, and that "the plaintiff well knew that the said price of $3,600 was grossly inadequate, but that knowing the dire pecuniary necessities of respondent, the said plaintiff took advantage thereof, and harshly and unconscionably oppressed him and caused him not only to bind himself to pay him for the loan of $1,000 interest at the rate of 16 6-10 *per cent.* but to also bind himself to agree to sell

him for $3,600 a tract of land, the then minimum value of which was from $7,500 to $9,000. Respondent is advised that by reason of the gross and unconscionable inadequacy in price, and of the inequitable conduct of the plaintiff, whereby he secured the execution of the said alleged option contract by respondent, the said alleged contract is not enforceable in a court of equity.''

Upon the pleadings, depositions were taken, and the case came on to be heard before the circuit court, which dismissed the complainant's bill; and from that decree an appeal was awarded.

We do not think that the appellee has maintained his defense with respect to the insufficiency of the description. There is some contrariety of opinion among the surveyors, but we think that the preponderance of the evidence is that the description is sufficient. The land is described as follows: ''All those certain lands now owned by the party of the first part that lie east of the center of that certain road that now extends from the main road leading from the Rich Patch Mines to Hays Gap to the lands now owned by the said E. L. Carter, which were recently purchased by him from Andrew Harmon's executor, and east of a line running due north from the center of said road at a point that the same intersects with said main road, including all appurtenances situated thereon, consisting, in part, of the Rich Patch post office building, one residence and stable, containing, it is estimated, about 300 acres, more or less.''

It is claimed that that part of the description which reads, ''east of a line running due north from the center of said road at a point that the same intersects with said main road,'' etc., is indefinite; the contention being that there was no northern terminus named; that this was the line which was to divide the property of the defendant, and the option covered all of his land east of said

line, but did not cover the land of the defendant west of said line. We think it is shown by the contract that the clear intention of the parties was to divide the property by running a line due north across the property to the outside boundary of defendant's land, and in accordance with that view Williams, who appears to be a competent surveyor, testified that with the option as his sole guide he had gone upon the land and had no difficulty in locating it, and that any person of reasonable intelligence, whether a surveyor or not, would have no difficulty in definitely locating all its boundaries.

Nor do we think that the appellee has maintained his defense of want of mutuality in the contract.

In Pomeroy on Specific Performance, sec. 169, it is said: "Whenever a contract is of such a form and nature that it contains mutual executory promises, or whenever it is intended that it should require future acts or omissions from each of the parties, and that each should be bound to such acts or omissions by express undertakings, then, in all such agreements, there must be both the mutuality of obligation and of remedy; but when it was intended that the contract should, in its express terms, be binding upon one of the parties alone, it may be specifically enforced against that party, although the remedy cannot be granted to him against the promissees."

And speaking of option contracts, in the same section, the author says, "Contracts of this kind are, in reality, condition-agreements. Upon the happening of the condition—that is, upon making the request, giving the assent, or declaring the option—they become absolute, and in many instances mutual in their obligation."

Nor do we think that the defense that the contract was without valuable consideration can avail appellee.

"It is now universally held that when an option is ac-

cepted, no other element entering in, it becomes an execu-
tory contract for the sale of the property with mutuality
of obligation and remedy. And the acceptance of the
option in the manner and within the time specified is suf-
ficient to bind both parties and removes any objection
to the enforcement of the agreement based thereon for
want of consideration. The option so given may or may
not be supported by a sufficient consideration. If it is
not so supported the offer is a mere gratuity which may
be withdrawn at any time before its acceptance. But if
an option unsupported by a consideration is accepted be-
fore it expires or is withdrawn, a binding contract is
thus formed. And if the offer to sell is supported by a
sufficient consideration, it cannot be withdrawn prior to
the expiration of the time specified.'' 1 Elliott on Con-
tracts, sec. 232; *Cummins* v. *Beavers,* 103 Va. 230, 48 S.
E. 891, 106 Am. St. Rep. 881, 1 Ann. Cas. 986; *Watkins* v.
*Robertson,* 105 Va. 269, 54 S. E. 33, 5 L. R. A. (N. S.)
1194, 115 Am. St. Rep. 880.

This brings us to a defense which is, we think, decisive
of the controversy. The appellee, Hook, was under
necessity to raise money of which he was in urgent need.
He applied to Carter for a loan, according to his account,
of $1,000, for which he agreed to execute his note bearing
interest at the rate of six *per cent.* for $1,100, and to se-
cure the payment thereof by deed of trust, and if the note
was not paid at maturity, to sell to him at the price of
$4,000 a certain portion of his land adjoining that owned
by Carter; that Carter verbally accepted this proposi-
tion, and it was agreed that on the next day they would
meet at the office of Mr. Parrish, an attorney, and close
the transaction; that when the verbal agreement of the
preceding day was about to be reduced to writing, Carter
declined to carry out his part of it, and refused to make
the loan of $1,000 to appellee unless, in addition to the

appellee giving him his interest-bearing note for $1,100 and securing its payment by a deed of trust, he would also give to Carter a written option at the price of $3,600, to buy a portion of his land; and that in the delemma in which he was thus placed by Carter's refusal to carry out his agreement of the preceding day, appellee executed the option contract which Carter is now seeking to have specifically enforced. Carter on the contrary insists that he actually loaned and advanced to Hook the full sum of $1,100, the repayment of which with interest at six *per cent.* was to be secured by deed of trust upon Hook's lands, and also entered into the option contract set out in the bill by the terms of which Carter obtained an option upon three hundred acres of land for $3,600; the option contract providing that the $1,100 with all interest that had accrued thereon should be deducted from the $3,600 to be paid for the land, if the option to purchase was exercised within one year from the date of the contract; and that within the twelve months he notified the defendant that he desired to purchase the property and tendered to him $3,600, less the $1,100 with interest to date.

We are of opinion that the evidence tends to establish appellant's statement of facts with regard to this transaction and maintains Carter's claim that he advanced the full sum of $1,100 to Hook; but we do not think that upon the whole record the appellant has shown as he was bound to show, that the contract of which he is seeking the enforcement was fair, equal and just. On the contrary we are of opinion that it was harsh and unconscionable. Hook was, as we have seen, in urgent need of money. He sought a loan from Carter and received, as we think the evidence shows, $1,100, for the payment of which with legal interest at six *per cent.* he was to execute a deed of trust upon his lands. Now the return

of the loan at six *per cent.* was all that Carter had a right
to demand of Hook, but it was not all that he received,
for in addition to the legal rate of interest he was to
acquire a right to purchase three hundred acres of land
at the price of $3,600. The evidence in the record shows
that this land was worth $30 an acre, or, as Hook him-
self states, from $8,000 to $10,000, and this estimate is
supported by a great preponderance of the evidence; so
that as a part of the contract for the loan of the money
Carter was to receive the full legal rate of interest, plus
a right to purchase for $3,600 land which was valued at
nearly three times that sum. That it was all part of the
original transaction culminating in the loan of the money
is put beyond the reach of controversy by Carter's own
testimony, in which he was asked:

"State, Mr. Carter, your real reason for loaning Mr.
Hook this money?

"A. Mr. Hook came to me to borrow this money,
and I told him I couldn't loan him the money, then he
wrote to me again and told me he would give me an op-
tion on that 300 acres of land if I would loan him the
money. I loaned him the money in order to get the op-
tion."

The controlling influence, therefore, inducing Carter
to make the loan was not the remuneration which the law
approves, but an option for the purchase of a valuable
tract of land to which Hook's necessities, but not his will,
consented.

Usury is defined in the 2nd edition of Black's Law
Dictionary as being, "A premium or compensation paid
or stipulated to be paid for the use of money borrowed
or returned, beyond the rate of interest established by
law." Wherever, therefore, by the terms of a contract,
money is loaned and the lender is paid or stipulates to be
paid a valuable consideration in excess of the rate al-
lowed by law, the contract is usurious.

In *Stribbling* v. *Bank of the Valley*, 5 Rand. (26 Va.) 132, it was held that "When a proposition is made for a loan of money, and the lender will only consent to lend a part of the money wanted on condition that the borrower shall receive stock at a price much above the market value, to make up the deficiency, and the bargain is made on these terms, such contract is usurious."

That case came again before the Court of Appeals in 7 Leigh (34 Va.) at page 26, where it was held that where there was a sale of stock at an exorbitant price, coupled with a loan of money, arising out of a proposition to borrow money, the sale and the loan constituting one entire contract, inseparably connected with each other, and the one made dependent upon the other, the transaction was usurious.

The principle of the cases just cited is precisely applicable to the one under consideration. In those cases the loan was made on condition that the borrower should purchase stock owned by the lender at a price much above the market value; while in the case before us the loan was made upon condition that the borrower should sell a farm to the lender at about forty *per cent.* of its actual value. If such a contract were sanctioned by this court, it would engraft a dangerous principle upon the law of usury. It would enable the lender to say, "You have a horse, a jewel, or a farm, which I crave, and in return for this loan you must pay me six *per cent.* interest, as allowed by law, and give me an option upon that which I covet."

Upon the whole case, we are of opinion that the decree of the circuit court should be affirmed.

*Affirmed.*