# Richmond

## Richard T. Jennings, Et Al. v. Realty Developers, Incorporated.

January 19, 1970.

Record No. 7034.

Present, All the Justices.

*J. Willard Greer*, for plaintiffs in error.

*Robert T. Vaughan* (*Frank M. Slayton; Vaughan, Slayton and Bennett*, on brief), for defendant in error.

HARRISON, J., delivered the opinion of the court.

Richard T. Jennings and Eva J. Ramsey, hereinafter referred to as appellants, complain of a jury verdict approved by the trial judge, in the sum of $3462.67. It was returned in an action brought by Realty Developers, Incorporated, hereinafter referred to as Realty Developers, or appellee, involving a breach of contract for the sale and purchase of real estate.

Realty Developers owned real property in South Boston, Virginia, identified as 1803 Wilborn Avenue, which it conveyed to James R. and Veronica Sirianni on October 26, 1962. As a part of the consideration, the Siriannis assumed payment of a deed of trust held by the Prudential Insurance Company in the amount of $13,470 and gave their note to Realty Developers for a portion of the purchase price.

The Siriannis were newcomers to South Boston and were uncertain whether or not they would be satisfied with the property or their move to that city. Realty Developers accordingly agreed in writing to cancel the sale and take the property back at any time within one year, and at the request of the Siriannis. In such event it was agreed the Siriannis would lose only the closing costs and the payments that they had made to Prudential.

Within the one-year period, the Siriannis decided that they did not wish to keep the property and vacated. They returned the keys to the dwelling, the deed which had been executed to them and a fire insurance policy. It also appears that a note which had been given Realty Developers by the Siriannis was destroyed.

At that time appellee did not require the Siriannis to execute a deed reconveying the property to it. An official of the company testified that it hoped to effect another sale of 1803 Wilborn Avenue, and that the deed could be made directly from the Siriannis to the new purchaser, thereby saving legal fees and recording charges.

By a duly signed agreement dated November 25, 1963, Realty Developers agreed to sell, and Richard T. Jennings and Eva J. Ramsey agreed to purchase, the property on Wilborn Avenue for $15,500. Of this amount, $13,500 was to be evidenced by the assumption of the Prudential loan, payable $88.87 per month, and the balance of $2000 by a note payable $17 a month.

Pursuant to this contract, possession of the property was delivered to the appellants, and Eva J. Ramsey moved into the dwelling. After

residing there for approximately one week, Mrs. Ramsey moved out, and appellants notified appellee that they would not purchase the property and returned the keys.

Realty Developers immediately advised Jennings and Ramsey that they would be expected to comply with their contract, and referred the matter to an attorney who advised them to the same effect.

Appellants having failed to comply with their contract, Realty Developers filed a suit for specific performance on June 3, 1964, alleging appellants owed it $15,500 plus interest and costs, and praying for judgment in that amount. It also asked the court to decree that the appellants perform the agreement. In its bill, Realty Developers alleged that it was ready and willing to perform on its part.

Appellants filed their respective answers on June 23, 1964, denying generally the allegations of the bill, but admitting that they entered into the written agreement on November 25, 1963 to purchase the real estate, and admitting further that Mrs. Ramsey moved into the house and lived there for a few days as alleged in the bill. The record shows no further action in this suit other than a decree entered on February 28, 1968, permitting Realty Developers a nonsuit.

On November 3, 1965, Realty Developers recorded the deed of reconveyance to it from the Siriannis which deed is dated October 15, 1965. Subsequently, on or about June 6, 1966, it sold the Wilborn Avenue property to a Mr. Chavez.

Realty Developers thereafter, on February 17, 1967, filed its motion for judgment against Jennings and Ramsey, seeking damages in the amount of $5369.84, by reason of their failure to comply with the contract.

Appellants answered the motion on March 15, 1967, denying generally all allegations except that Mrs. Ramsey lived in the house for a few days. They also denied that they were indebted to Realty Developers for the reason that the contract was incomplete, uncertain and never executed by the vendor.

On February 28, 1968, over the objection of appellee, the appellants were granted the right to file an amended answer. They alleged that appellee's action for damages was barred because of the pending suit for specific performance, the two actions being inconsistent remedies and therefore a resort to one was a bar to the right to invoke the other.

On the same day, and prior to impaneling the jury in the case under review for breach of contract, appellants moved for summary judg-

ment upon the ground that the appellee's action was barred by its election to file a suit for specific performance. The court overruled the motion, being of opinion that the nonsuit previously taken on that day by Realty Developers of its suit for specific performance constituted an election of remedies, and that therefore the action for breach of contract was not barred and could be maintained.

■ We first consider the assignment of error which alleges lack of mutuality. In the trial court, the appellants based their claim of lack of mutuality solely upon the ground that the Siriannis "never signed the contract," meaning the contract between the appellants and the appellee. On appeal, the appellants advance other grounds to support their contention of lack of mutuality. However, we will confine our consideration to the ground relied upon in the trial court.

It was not necessary that the Siriannis sign the contract for it to be mutually binding upon the appellants and the appellee. The contract was in valid form, was dated, bore the signatures of Mr. Jennings and Mrs. Ramsey, the purchasers, and was executed on behalf of Realty Developers, the sellers, by an officer of the corporation. The property was identified accurately as 1803 Wilborn Avenue, South Boston, Virginia. The owner agreed to sell and convey the property and the purchasers agreed to buy and pay for it. The consideration was specified, $15,500, and the manner of its payment was detailed.

After the agreement was executed, nothing remained to be done except for the parties to perform and carry out their promises. Failure by either party to do so would have constituted a default rendering the offending party answerable to the other.

Admittedly, the Siriannis held legal title to the property when the contract was executed, and the appellee was not, therefore, at that time able to convey good title. But it does not necessarily follow that the appellee was consequently barred from recovery for the appellants' later breach.

The rule applicable to this situation is set forth in *Mundy* v. *Garland*, 116 Va. 922, 936, 83 S.E. 491, 495 (1914), as follows:

"It is true that a vendor, in order to recover for the breach of a contract by the vendee, must himself be able to keep and perform the contract on his part; but as we understand the rule it is not necessary for him, in order to maintain an action for such breach, to be able to convey such title as he contracts to convey at the time

he enters into the contract, but he must be able to do so when he is required by the terms of the contract to perform on his part.

"The doctrine on this subject is thus stated in 39 Cyc. 1983, and is sustained by the decisions: 'It follows from the general rule . . . that the vendor, in order to recover for a breach by the purchaser of the contract of purchase, must have been able to convey a good title, or such as would comply with the requirements of the contract; but it is not necessary that he should have good title at the time of the contract, but only that he should be able to convey a good title at the time of performance.' See also *Daniel* v. *Leitch*, 13 Gratt. (54 Va.) 196, 213; *Goddin* v. *Vaughan*, 14 Gratt. (55 Va.) 102, *Conover* v. *Tindall*, 20 N.J.L. 513."

We hold that the fact that the Siriannis "never signed the contract" in this case is not ground for declaring the contract lacking in mutuality.

Appellants further assign as error the action of the lower court in overruling their motion for a summary judgment upon the ground that having brought a suit for specific performance of the contract in question, this constituted an election of remedies by appellee, and it was barred from thereafter bringing an action for damages. They contend that the two actions are inconsistent and the institution of one bars the other.

*Pollard & Bagby* v. *Thalhimer*, 169 Va. 529, 194 S. E. 701 (1938) is pertinent to appellants' contention and our decision. There a controversy existed between two real estate agents over a division of commissions. Plaintiff filed a bill of complaint in November, 1933, demanding an accounting, to which bill defendant demurred and answered. In March, 1934, plaintiff filed its motion for judgment, relying upon the same facts to sustain a recovery that were set out in the bill. The common law action was tried before a jury in July, 1934, and resulted in a mistrial. In October, 1935, defendant moved that the chancery suit be dismissed on the ground that a common law action had been instituted, based upon the same set of facts. The court overruled the motion, but ordered that the plaintiff " ' . . . do make an election, forthwith, as to which proceeding it shall elect not to prosecute against the defendant. . .' ". Thereupon, plaintiff filed an amended bill which the defendant answered. The suit was

heard in December, 1936, and resulted in a recovery by the plaintiff from the defendant, which was affirmed.

The following extracts from the opinion of Mr. Justice Holt are relevant to the assignment under discussion:

> "These proceedings are both consistent and inconsistent—consistent in that full relief might flow through either channel; inconsistent in that plaintiff can be compensated but once.
>
> "By instituting its action at law, it concedes that the law court also might give to it complete and adequate relief. Can it bring a suit in chancery, and before any action is taken thereon, institute an action at law on the same state of facts, where both courts have power to give complete and adequate relief; and if so, can an election be ordered, and when must it be made?
>
> "The mere institution of double-barrel litigation is not necessarily an election.
>
> " 'If a suit in equity and an action at law between the same parties and touching the same subject matter are pending at the same time, the court of equity, upon the application of the defendant, should compel the complainant to elect which he will prosecute.' [Citing cases.]

* * *

> " 'When A wrongfully takes the property of B and sells it, B may bring trespass, trover, detinue or assumpsit for money had and received, against A at his election; but having elected one of these forms of action, and prosecuted it to judgment, he cannot then abandon it and bring another.' From which it follows that a second action might have been instituted had the first not yet been brought to final judgment.

* * *

> "The authorities cited appear to indicate that the institution of an action at law, after the bringing of a chancery suit, does not constitute an election, and this conclusion appears to be supported by the weight of authority elsewhere. [Citing authority.] Plaintiff itself appears to have recognized this and contends not that the institution of the common-law action was an election but that it 'by instituting and prosecuting the action at law *** (it) had thereby elected to prosecute and proceed to a final determination of its said claim in said action at law.'

"Of course, there can be but one satisfaction for one cause of action.

\* \* \*

"In the instant case the plaintiff has received no benefit from the common law trial and the defendant has lost no right, although he has been put to the trouble and expense which it necessitated. Beyond this, there is nothing to indicate that Pollard & Bagby were injured by this shift in position. [Citing case.] All that we know is that there was a common-law mistrial. That record is not before us. It was had on July 19 and 20, 1934, and it was not until October 15, 1935, that there was any suggestion of the defense now relied upon.

"We do not think that the bare fact that there was a common-law mistrial constitutes an estoppel.

"From the day on which the common-law action was instituted the defendant below could have compelled an election, and when requested, on October 15, 1935, it was properly promptly ordered." 169 Va. 529, 534, 535, 537, 194 S. E. 701, 702, 703, 704.

In *Pollard & Bagby* v. *Thalhimer, supra,* as in the instant case, the plaintiffs first instituted suits in equity. Thereafter, in both cases the plaintiffs brought common law actions. There the common law action proceeded to trial and resulted in a mistrial. Then the plaintiff reactivated its chancery suit and was met with a motion to elect, and it did elect. Here nothing was done in the chancery suit until the day for trial of appellee's law action, at which time a nonsuit was taken. An election having been made, and the chancery suit dismissed, the parties proceeded with a trial of the law action.

Consistent with *Pollard & Bagby* v. *Thalhimer, supra,* we hold that the mere institution of a suit in chancery does not necessarily of itself constitute an election of remedies and preclude the bringing of an action at law; that where two proceedings are instituted on the same state of facts, the defendant can compel the plaintiff to make an election; and that there can be only one recovery where the cause of action involves the same parties and touches the same subject matter.

In the instant case the trial judge, before permitting Realty Developers to proceed in its law action, required that it make an election. The election was made and the chancery suit was dismissed, leaving only one cause of action which was prosecuted to a judgment.

The action of the court below and our holding reflects what we believe to be the best considered view. See 6 Mich. Jur., Election of Remedies, §§ 2, 4, 7, pp. 554, 555, 558; 25 Am. Jur. 2d, Election of Remedies, § 31, p. 673; 28 C. J. S., Election of Remedies, §§ 31, 32b., pp. 1104, 1107.

Appellants also complain that appellee failed to minimize damages during the time that it was in possession of the real estate following the alleged breach of contract.

The jury was instructed, without objection, that it was the duty of appellee to exercise diligence to make a reasonable effort to avoid loss and to minimize or lessen the damage sustained as a result of the breach of contract, and that if it failed to take such action, it could not recover for any enhanced or increased damages.

The explanation of Realty Developers for its failure to rent or sell the property more promptly after appellants defaulted in their contract is that it regarded the property as that of appellants, and was hoping that they would fulfill their agreement. Furthermore, the officials of appellee stated that it was not in the rental business and introduced evidence of a depressed real estate market in South Boston during the period in question. This was denied by appellants, thereby posing a question of fact.

All factual matters, including the issue of damages, were resolved by the verdict of the jury approved by the trial court. There is evidence in the record which supports the verdict. We cannot say it is plainly wrong.

Appellants further say that appellee failed to prosecute the specific performance suit promptly after its commencement. There was a time lag between the filing of the bill for specific performance and its dismissal, and the trial of the law action. Appellee's explanation is that a portion of the time it was endeavoring to persuade appellants to fulfill their contract, and thereafter it was trying to effect a sale of the property.

While there was a duty on the part of appellee to minimize damages, as the jury was told, it did not lose its cause of action by the delay. Appellants were put on notice immediately they breached their contract that appellee would hold them answerable. Had they desired a more expeditious resolution of the controversy, it was within their power, as well as that of appellee, to enlist the aid of the court in speeding the cause.

The judgment of the lower court is                    *Affirmed.*