## CIRCUIT COURT OF STAFFORD COUNTY

Springfield
Engineering Corp., P.C.

v.

Three Score
Development Corp. et al.

January 7, 1992

Case No. (Chancery) 395–89

BY JUDGE JAMES W. HALEY, JR.

The pinion issue here for resolution is whether William S. Sims and Teresa A. Sims ("Simses") were necessary parties to a Bill to Enforce a Mechanic's Lien.

By contract dated November 14, 1988, the Simses agreed to sell approximately 48 acres in Stafford County to Three Score Development Corporation ("Three Score"). On November 28, 1988, this contract was recorded in Deed Book 648 at pages 841–843.

The contract contained the following language ("Paragraph 4"):

4. The parties recognize that Purchaser intends to subdivide the parcel being conveyed by the Seller into building lots. The Seller and Purchaser recognize that until a plat of subdivision has been recorded, that the property conveyed herein will be owned by the Purchaser. The Purchaser agrees promptly to prepare a subdivision plat after closing and agrees to record the plat as quickly as possible within its development plans subsequent to closing, but in no event later than two years after the date of settlement. Upon the recordation of the plat, the Seller shall be entitled to select a lot within the plat of subdivision and at the time of selection shall pay a fixed price of $30,000 being agreed that minimum size of the conveyance to the Pur-

chaser shall be 3 acres. The $30,000 shall be payable upon the transfer of title from Purchaser to Seller of the 3 acres selected by the Seller, provided that the selection is one of the regularly subdivided lots prepared by the Purchaser. In the recordation of the lots, Purchaser agrees to provide vehicular access to the property and provide a building lot with appropriate percolation to provide for a single family dwelling. The Seller and Purchaser agree that prior to the obligation of the Seller to purchase the lot, the roads to the lot will be bonded for improvement with the county or state officials.

Pursuant to the contract, the Simses conveyed the property by deed dated February 15, 1989, and recorded on February 22, 1989, in Deed Book 663 at pages 55–56. This deed contained the following language:

> The undersigned agree that the terms of the real estate pur-chase contract recorded in Deed Book 648, page 841, shall survive this deed and are incorporated herein.

On May 18, 1989, Blue Ridge Construction Corporation ("Blue Ridge") recorded a Memorandum of Mechanic's Lien on the prop-erty in Deed Book 678 at page 54 in the amount of $267,000. This memorandum named only Three Score as an owner.

On July 24, 1989, Springfield Engineering Corporation ("Spring-field"), another mechanic's lienor on the property, filed a Bill to Enforce the same against Three Score and, among others, Blue Ridge. Blue Ridge filed an Answer and a Petition to Intervene on August 16, 1989. The Simses were not named party defendants in the original Bill to Enforce filed by Springfield nor in Blue Ridge's Peti-tion to Intervene. By order dated May 14, 1990, Springfield was permitted to add the Simses as additional party defendants. By order dated May 31, 1990, Springfield, its claim compromised and satis-fied, was dismissed as party claimed.

To date no plat of subdivision has been recorded.

Three Score has demurred, relying upon § 43–17,[1] *Neff v. Gar-rard*, 216 Va. 496, 219 S.E.2d 878 (1975), and *Commonwealth*

---

[1] Section 43-17. *Limitation on suit to enforce lien.* — No suit to enforce any lien perfected under Sections 43-4, 43-5, and 43-7 to 43-10 shall be brought after six months from the time when the memorandum of lien was recorded or after

*Mech., Inc. v. Standard Fed. S. & L.,* 222 Va. 330, 281 S.E.2d 811 (1981),[2] for the proposition that the Simses were necessary parties not timely joined in the Bill to Enforce the Mechanic's Lien, that is, Blue Ridge's Memorandum of Mechanic's Lien was filed on May 18; 1989, and the Simses did not become parties until May 14, 1990. Accordingly, Three Score argues, Blue Ridge's mechanic's lien should be held invalid as unenforceable.

It must first be determined whether Paragraph 4 is a contract of sale or a contract of option.

An option is a right to purchase. *Shirley v. Van Every,* 159 Va. 762, 770, 167 S.E. 345, 347 (1933); *Leech v. Harmon,* 171 Va. 35, 46, 197 S.E. 453, 460 (1938). *See also,* 17A Am. Jur. 2d *Contracts,* § 49–50, pp. 80–81.

In *Landa v. Century 21 Simmons & Co.,* 237 Va. 374, 381, 377 S.E.2d 416, 420 (1989), the Supreme Court stated:

> The option compels performance within the time limit specified, or if none is mentioned, then within a reasonable time . . . . Professor Corbin wrote that an option contract is one in which a seller makes an irrevocable offer to sell on specified terms and which creates in a buyer a power of acceptance. 1A A. Corbin, *Corbin on Contracts,* § 261A (1963).

A contract of option becomes a contract of sale when the optionee exercises his option; the commentator in 17 M.J. *Specific Performance,* § 6, n. 14, p. 11 (1979 Repl. Vol.), writes:

> An option for the purchase of real estate, if complete and certain as to its terms and based upon valuable consideration paid, is converted into a contract of sale, which may be specifically enforced in equity by an acceptance by the vendee within the time limits therein.

---

sixty days from the time the building, structure or railroad was completed or the work thereon otherwise terminated, whichever time shall last occur; provided, however, that the filing of a petition to enforce any such lien in any suit wherein such petition may be properly filed shall be regarded as the institution of a suit under this section; and, provided further, that nothing herein shall extend the time within which such lien may be perfected.

[2] And, presumably, though not cited, Mendenhall v. Cooper, 239 Va. 71, 348 S.E.2d 223 (1990), and Webb v. United States Fidelity, et al., 165 Va. 388, 182 S.E. 557 (1935).

Thus, in *Ryland Group, Inc. v. Wills*, 229 Va. 459, 464, 339 S.E.2d 399, 402-403 (1985), the Supreme Court stated:

> We agree that upon exercise of the option, Ryland would acquire an equitable interest in the lots it committed itself to purchase, with the right to compel conveyance of legal title. *See, Carmichael v. Snyder*, 209 Va. 451, 455, 164 S.E.2d 703, 706 (1968); 2 R. Minor, *supra*, § 1190; 2 H. Tiffany, *supra*, § 407. Upon exercise of the option, the agreement would become an executory contract for the sale of land with mutuality of obligation and remedy. *Carter v. Hook*, 116 Va. 812, 817-18, 83 S.E. 386, 388 (1914).

Every contract of sale requires there be:

> absolute mutuality of engagement, so that each party has the right to hold the other to a positive agreement. Both parties must be bound, or neither is bound. *Vinton v. Roanoke*, 195 Va. 881, 896, 80 S.E.2d 608, 617 (1954); *American Agricultural Chem. Co. v. Kennedy*, 103 Va. 171, 176, 48 S.E. 868, 870 (1904). *Capps v. Capps*, 216 Va. 378, 381, 219 S.E.2d 904 (1975).

And in *Rolfs v. Mason*, 202 Va. 690, 692, 119 S.E.2d 238, 240, 2 A.L.R. 3d 659 (1961), the Court stated:

> It is well settled that a contract must be complete and certain and that the essential elements of price and terms of sale must have been agreed upon before a court of equity will specifically enforce the contract. *Duke v. Tobin*, 198 Va. 758, 759, 96 S.E.2d 758.

A contract of sale for real estate grants the right to compel conveyance, but, as the court in *Robertson v. Gilbert*, 219 Va. 620, 624-625, 249 S.E.2d 787, 789 (1978), noted:

> Specific performance is not a remedy of right. To invoke this extraordinary equitable remedy, the complainant must first prove a contract enforceable at law, 71 Am. Jur. 2d *Specific Performance*, § 13 (1973), and the performance granted must be "the very (specific) thing called for by the contract." Dobbs, *Remedies*, sect. 12.2 at 795 (1973).
>
> In a suit for the specific performance of a contract to sell land, the description of the property must be such as to

enable the court to determine with certainty, with the aid of such extrinsic evidence as is admissible under the rules of evidence, what property was intended by the parties to be covered thereby. *Pavlock v. Gallop*, 207 Va. 989, 993, 154 S.E.2d 153, 156 (1967).

As the court stated in *Jennings v. Realty Developers, Inc.*, 210 Va. 476, 479-480, 171 S.E.2d 829, 832 (1970), quoting from *Mundy v. Garland*, 116 Va. 922, 936, 83 S.E. 491, 495 (1914):[3]

it is not necessary for . . . [a party] . . . in order to maintain an action for such breach, to be able to convey such title as he contracts to convey at the time he enters into the contract, but he must be able to do so when he is required by the terms of the contract to perform on his part . . . .

Nonetheless, it is necessary that the parties agree at time of performance concerning the "location and boundaries . . ." of the real property. *Shepherd v. Colton*, 237 Va. 537, 541, 378 S.E.2d 828, 830 (1989).

The language of paragraph 4 contemplates the recording of a subdivision plat:

as quickly as possible within its development plans subsequent to closing, but in no event later than two years after the date of settlement.

While a settlement date is not revealed by the pleadings, it nonetheless necessarily occurred prior to February 22, 1989, when the deed of conveyance was recorded. No subdivision plat has as yet been recorded. As a consequence, and even assuming the 2 year limitation is of no consequence, the purchaser cannot "select a lot within the plat of subdivision . . ." as is provided in Paragraph 4, and thereby render the contract of option one of sale.

In addition, a reasonable interpretation of the specific language of paragraph 4 requires the conclusion that the agreement is a contract of option, not a contract of sale. The Simses are *"entitled"* to select a lot but are not required to do so. And the Simses are not obligated to purchase a lot until and unless they have exercised their right of selection.

---

[3] See also, Wright v. Bryan, 226 Va. 557, 560, 311 S.E.2d 776, 778 (1984); Waskey v. Thomas, 218 Va. 109, 112, 235 S.E.2d 346, 348 (1977).

For these reasons, then, the court concludes that paragraph 4 is a contract of option.

An option contract ostensibly creates no vested or equitable interest in real property. *Skeen v. Clinchfield Coal Corp.*, 137 Va. 397, 406, 119 S.E. 89, 91 (1923); 1 R. Minor, *The Law of Real Property*, § 823 (2d Ed. 1928); 2 H. Tiffany, *The Law of Real Property*, § 405 (3d Ed. 1939 & Supp. 1985). Such an interest in real property only arises upon exercise of the option by the purchaser. *Ryland Group, Inc. v. Wills, supra,* 229 Va. at 464, 331 S.E.2d at 402; *Carmichael v. Snyder,* 209 Va. 451, 455, 164 S.E.2d 703, 706 (1968); *Sale v. Swann,* 138 Va. 198, 208, 120 S.E. 870, 873 (1924); *Carter v. Hook,* 116 Va. 812, 817–818, 83 S.E. 388 (1914). An option contract creates what the authors of a *Preface to Estates in Land and Future Interests*[4] call "something in the nature of an equitable contingent interest in the property."

Nonetheless, the legislature has recognized an option (or a memorandum of same) as in the nature of an interest in real estate which may be recorded and by that recordation protect the optionee's interest in the real estate.[5]

---

[4] Preface to Estates in Land and Future Interests, Bergin & Haskell (2d ed. 1984) p. 207.

[5] Section 55-57.1. *Memoranda of leases and options.* — B. In lieu of the recording of an option to purchase real estate, there may be recorded with like effect a memorandum of such option, executed by the grantor of the option in the manner which would entitle a conveyance to be recorded. A memorandum of option to purchase real estate thus entitled to be recorded shall contain at least the following information with respect to the option:

1. The name of the person granting the option;

2. The name of the optionee and a reference to the option;

3. The addresses, if any, set forth in the agreement as addresses of such parties;

4. Its date;

5. A description of the optioned premises;

6. The option price or reference to the document containing the method with regard to how the option price is computed; and

7. The statement of the term, commencement date or termination date, and rights of extension or renewal, if any, to the extent required to determine the period during which or date to which the option may be in effect.

Section 55-57.2. *Effect of option; recording.* — A. Any option to purchase real estate, and any memorandum, renewal or extension thereof shall be void

In *Rosser v. Cole*, 237 Va. 572, 577, 379 S.E.2d 323, 325 (1989), the Supreme Court stated:

> Being in derogation of the common law, the statutes relating to the existence and perfection of a mechanic's lien are strictly construed. *Clement v. Adams Bros.-Paynes Co.*, 113 Va. 547, 552, 75 S.E. 294, 296 (1912).

In a Bill to Enforce a Mechanic's Lien, the Court in *Mendenhall v. Cooper*, 239 Va. 71, 75, 387 S.E.2d 471, 474 (1990), stated:

> Consequently, we must determine whether the new defendants in the present case are necessary parties. We define "necessary parties" broadly: "Where an individual is in the actual enjoyment of the subject matter, or has an interest in it, either in possession or *expectancy*, which is likely either to be defeated or diminished by the plaintiff's claim, in such case he has an immediate interest in resisting the demand, and all persons who have such immediate interests are necessary parties to the suit." *Raney v. Four Thirty Seven Land Co.*, 233 Va. 513, 519-20, 357 S.E.2d 733, 736 (1987) (quoting *Gaddess v. Norris*, 102 Va. 625, 630, 46 S.E. 905, 907 (1904) (citation omitted)). Moreover, we have held that both the trustee and the named beneficiary of an antecedent deed of trust are necessary parties in a suit to enforce a mechanic's lien. *Walt Robbins, Inc.*, 232 Va. at 47-48, 348 S.E.2d at 227. See also Code § 55-66.1. (Emphasis supplied.)

In *PIC Company v. First Union Bank*, 218 Va. 915, 241 S.E.2d 804 (1978), First Union had bid in at its foreclosure sale lots on which PIC had filed a Memorandum of Mechanic's Lien. Thereafter First Union conveyed the lots to the Settis. First Union was permitted to intervene in the Bill to Enforce a Mechanic's Lien pursuant to Section 43–17.1[6]

---

as to (i) all purchasers for valuable consideration without notice not parties thereto and (ii) lien creditors, until such instrument is recorded in the county or city where the property embraced in the option, memorandum, renewal or extension is located. . . .

[6] Section 43-17.1 states in part: "Any party, having an interest in real property against which a lien has been filed may . . . . petition the court . . . . to hold a

The court stated:

> At the threshold, we are confronted with a question of standing. PIC contends the trial court erred in allowing First Union to participate in these suits because "at the time it sought to enter these causes, it had already by deed conveyed its interest to [the Settis]." The question thus becomes: Did First Union, at the time it filed its March, 1976, petition, have "an interest in [the] real property against which [the] lien [had] been filed," within the meaning of Code § 43–17.1, *supra*? We think it did, even if we assume delivery of the March 4 deed took place before suit was filed six days later. According to an attested copy of the deed contained in the record on appeal, First Union's conveyance to the Settis was "with special warranty of title." Under Code Section 55–69, such a promise has the effect of a covenant by a grantor that he will forever warrant and defend such property "unto the grantee . . . against the claims and demands of the grantor, and all persons claiming . . . through . . . [the grantor]." As a mechanic's lienor, PIC was a person claiming "through" First Union within the meaning of § 55–69. Thus, in view of its covenant and because the property covered by a mechanic's lien still remains as security after conveyance to a subsequent purchaser, First Union possessed a sufficient "interest," within the meaning of § 43–17.1 to have standing to enter this controversy.

In *Wallace v. Brumbach*, 177 Va. 36, 42, 12 S.E.2d 801, 805 (1941), the court stated:

> the provision for perfecting the lien by the recordation of the memorandum and the indexing of the same must be read in connection with and as part of the registry act (Chapter 210 of the Code of 1936, Section 5184, *et seq.*) which provides for the recordation of certain writings in order to give constructive notice thereof to interested parties.

In *E. E. Stump Well Drilling v. Willis*, 230 Va. 445, 338 S.E.2d 841 (1986), the Supreme Court had to decide whether the vendee in a

hearing to determine the validity of the lien."

contract of sale of real estate, which was unrecorded, who had completed the construction of improvements on the property, was entitled to priority as an "owner" over Stump's mechanic's lien, pursuant to the provisions of § 43–16.[7]

Relying upon the language of *Wallace v. Brumback* quoted above, the court denied priority and stated:

> The rule enunciated in *Wallace* must work both ways. In other words, if a claimant stands to lose his lien if he does not name the person who is the record owner at the time the memorandum of lien is filed, then an owner of land *or an interest therein* should not be entitled to protection from a mechanic's lien if he fails to record the contract *or other instrument evidencing his interest.* (Emphasis supplied.) 230 Va. at 450, 338 S.E.2d at 839.

In *Duggin v. Adams*, 234 Va. 221, 225, 360 S.E.2d 832, 835 (1987), the court stated:

> A party to a contract has property rights in the performance of . . . [a] . . . contract, and these rights are entitled to protection in the courts. *Worrie v. Boze*, 198 Va. 533, 536, 95 S.E.2d 192, 196 (1956).

In *Addington-Beaman Lumber Co. v. Lincoln S. & L.*, 241 Va. 436, 439, 403 S.E.2d 688, 690 (1991), it was necessary to allocate costs among individual units in a memorandum of mechanic's lien because:

> the interests of third parties, such as construction lenders, other mechanic's lienors, and *subsequent purchasers* may be impinged upon by a joint and blanket lien. (Emphasis supplied.)

From the foregoing, it is clear that Virginia law has evolved to firmly protect those with an interest in, or an expectancy of an interest in, real estate subject to a Bill to Enforce a Mechanic's Lien. Indeed, in Ulrich, *Va. & West Va. Mechanic's and Materialmen's Liens*, sect. 2–13(b)(1991 Supp.), the commentator advises that: "Any party who has, had, or might conceivably obtain an interest should be joined."

---

[7] Section 43-16 reads in part: "If the owner is compelled to complete his building . . . . the amount expended . . . . shall have priority over all mechanic's liens. . . ."

That said, nonetheless, the purpose and policy underlying the mechanic's lien statutes must not be forgotten.

In 1874 the Court of Appeals in *Merchants & Mechanic's Saving Bank v. Dashiell*, 66 Va. (25 Gratt.) 616, 621 (1874), stated that:

> The title of the act is "an act in relation to mechanics' liens," and the whole scope and object of the act is to insure to this useful class of laborers the certain and speedy rewards of their labor, and to prevent the fruits of their daily toil, when matured, from being reaped by others.

In *Bristol Iron & Steel v. Thomas*, 93 Va. 396, 400-401, 25 S.E. 110, 111-112 (1896):

> The object of the law in creating liens in favor of mechanics was to secure to a deserving class of men the fruits of their labor. The statute upon the subject is remedial in its nature, and while courts require a strict compliance with all that the statute prescribes for the completion or perfecting of the lien, and cannot by construction supply any failure or omission upon the part of the claimant, and to this extent may be said to place a strict construction upon the statute, as being an innovation upon the common law, yet when the mechanic has done all that it is necessary for him to do, has performed the work or supplied the material, and perfected his lien therefor in the prescribed mode, the duty of the courts is to see that those whom the law intended to protect shall enjoy the advantages which it confers.

The contract of option in this case recites that Three Score is to record its subdivision plat "in no event later than two years after date of settlement . . ." that is, prior to February 22, 1991. No plat has as yet gone to record. The quoted language by its terms must be read as to terminate the optionee's expectancy of an interest in the real estate.

As noted in Footnote 5 *supra*, to be recorded pursuant to § 55–57.1, a memorandum of option requires a term of limitation. It must set forth:

> 7. The statement of the term, commencement date or termination date, and rights of extension or renewal, if any,

to the extent required to determine the period during which or date to which the option may be in effect.

Moreover, it is arguable that without the quoted language of temporal limitation, the instant option may violate the rule against perpetuities and be therefore void *ab initio*. That rule is applicable to contracts of option. *United Virginia Bank v. Union Oil*, 214 Va. 48, 51, 197 S.E.2d 174, 176 (1973). And this is so even though § 55–13.3:

modified the . . . rule . . . by providing that no transfer of an interest in property will fail unless it *does not vest*, if at all, within the period of the rule. *The Ryland Group v. Wills*, 229 Va. 459, 463, 331 S.E.2d 399, 402 (Footnote 2) (1985) (Emphasis in original.)

Finally, and by analogy, § 43–20 deals with the extent of a mechanic's lien when a contract owner causes a structure to be built or repaired on the subject land. As used in § 43-20:

"a contract for the sale of real estate" shall not include . . . an option to purchase real estate unless the option is enforceable against the optionee.

In the instant case, the Simses are not obligated to purchase unless and until they choose a lot on a recorded subdivision plat. The contract of option cannot therefore be enforced against them.

This court is of the opinion that the interest of the Simses, if any, in the real estate subject to the Bill to Enforce a Mechanic's Lien is insufficient to render them necessary parties to that proceeding. Accordingly, the motion to declare the lien of Blue Ridge invalid is denied.