## CIRCUIT COURT OF THE CITY OF RICHMOND

William T. O'Neill
and Cynthia O'Neill

v.

Dean C. Williams

February 22, 2001

Case No. HJ-1544-1

BY JUDGE MELVIN R. HUGHES, JR.

Originally filed as an action in equity for specific performance of a contract for the sale of land, by the time of trial plaintiffs-sellers had sold the property to a third party leaving only claims of breach of contract and damages. Following a bench trial, the court took the case under advisement particularly on the question of mitigation of damages.

Briefly, the evidence outlined the following course of events. On February 1, 1993, defendant Dean C. Williams entered into a written contract to purchase real property from plaintiffs, William T. and Cynthia O'Neill. The property is a renovated duplex consisting of two apartments up and down. At the trial, Williams testified that he never entered into a contract for purchase and never intended to purchase the property from the O'Neills. The responses to Requests for Admission offered into evidence by the O'Neills, however, stated that Williams admitted to executing the subject contract for the purchase. Accordingly, the court finds that the parties had a contract for the purchase of the property.

The contract called for a purchase price of $250,000 with a date of performance set for no later than March 17, 1998. The parties agreed that Williams would be entitled to certain tax credits available under law due to renovation of the property and that the purchase price would adjust according to whether Williams utilized the credits. In the meantime, the parties agreed to a leasehold arrangement first for Unit A for a five year period from April 11, 1993, to March 31, 1998, and later for Unit B for a five year period from August 15, 1993, to August 14, 1998.

By letter dated March 14, 1997, Williams advised the O'Neills that issues in his personal life prompted a "reconsideration of our lease arrangement, including the option to purchase this property." He advised that he would not "exercise the option to purchase the property." On March 19, 1997, counsel for the O'Neills responded and advised Williams he would "not be released from your obligations under the leases or the contract of sale" and disputed Williams's mention of an "option" in his letter stating that the "contract call[s] for you to purchase the property on or before March 16, 1998."

Later the following July, the O'Neills by letter extended an offer to assist Williams in finding another purchaser. In February 1998, the O'Neills wrote Williams asking for an indication of his intentions, indicating that the parties had had some discussions of an adjustment in the purchase price in January 1998. The closing date of March 15, 1998, came without any further contacts between the parties. On August 21, 1998, the O'Neills filed this action.

While the suit was pending and before the trial, the O'Neills sold the property to a third party for $192,000 in May 1999. They had previously begun advertising the property for sale through a real estate agent beginning March-April 1999.

As mentioned, the court took the case under advisement particularly on the question of mitigation of damages. As noted, the court finds that the parties had a contract for sale of the property. The court also finds that defendant breached the contract. Under the circumstances the question becomes whether there was a duty to mitigate damages on the part of the O'Neills, when did such duty arise, and what is the extent of mitigation under law under the facts of this case.

To answer these questions, the point at which any breach occurred should be determined. Where an executory contract to purchase real estate is repudiated by the purchaser by a positive expression of abandonment or by acts wholly inconsistent with an intention to perform, the seller may rescind the contract altogether, treat the repudiation as an immediate breach, or wait for the time of performance and bring suit thereafter. *See Simpson v. Scott,* 189 Va. 392, 397 (1949). *See also Roberts v. Coal Processing Corp.,* 235 Va.

556, 561. An anticipatory breach occurs when there is an unequivocal or positive expression of abandonment or conduct sufficient to evince an intent that is inconsistent with the intention to perform. *See Board of Supervisors of Fairfax County v. Ecology One, Inc.*, 219 Va. 24, 33 (1978). The evidence of Williams's letter of March 14, 1997, along with his conduct thereafter and Williams's testimony all point to an abandonment of the contract evincing an intention to not perform as of that date. The O'Neills were within their rights to treat the deadline for performance as the date of Williams's breach. They filed this action one week after Williams's second lease ended and five months after the contract for sale was to be performed.

Turning now to the issue of mitigation. One who is injured by the acts of another constituting a breach of contract must act reasonably to minimize resulting damage. *Haywood v. Massie*, 188 Va. 176, 182 (1948). *See also Miller v. Johnson*, 231 Va. 177, 186 (1986). To the extent that a plaintiff's damages are the result of a failure to exercise such care, a plaintiff may not recover. *Id.* Accordingly, the O'Neills had a duty to act with reasonable care to minimize the damage resulting from Williams's breach.

Under the rules governing an anticipatory breach, the O'Neills were not under a duty to mitigate their damages between March 14, 1997, and March 15, 1998. However, in keeping with those rules, they were under such duty after March 15, 1998, the date set by the contract for Williams's performance. There is also the issue of whether they could wait five months as they did, from the time of breach before bringing suit. According to the O'Neills, the wait was necessitated by the need to wait until the end of the lease on Unit B (August 14, 1998) and the need to conduct repairs on the property in anticipation of sale. Accordingly, the court finds that while the O'Neills had a duty to mitigate, they satisfied that duty, considering the circumstances after performance was due until they filed suit.

Moreover, failure to mitigate damages is an affirmative defense, and the defendant bears the burden of proof on that issue. *R. K. Chevrolet, Inc. v. Bank of Commonwealth*, 256 Va. 74, 77 (1998). Williams's contention that the O'Neills' estimation of damages is too high due to their failure to mitigate is without merit given the options available to them after anticipatory breach and because there is no evidence concerning how any such mitigation is estimable. For example, Williams did not offer any evidence of what actions the O'Neills could have taken, how those actions might have reduced the damages, or the amount(s) by which those damages might have been reduced. In *Jennings v. Realty Developer, Inc.*, 210 Va. 476 (1970), the seller put the buyer on notice that he was going to hold him accountable for breaching the sales contract. The buyer pointed to the failure of the seller to sell or rent the

subject property promptly. The seller introduced evidence of a depressed real estate market in the area. Just as here, following repudiation, the *Jennings* sellers regarded the property as the buyer's and tried to persuade the buyer to perform. Unlike the case at bar, the sellers countered the buyer's assertion of failure to mitigate with evidence that a sale was made difficult by market conditions. Following the March 1997 letter, Williams cannot be heard to complain about the O'Neills' inactivity. Also, Williams could have resorted to the court on his behalf to seek a resolution of the parties' differences and thereby minimize any damages the O'Neills might claim.

With these things considered, there is no evidence before the court upon which an estimate of the extent to which plaintiffs' damages were not minimized can be made. For the reasons discussed, the O'Neills could wait as they did until the date of performance arrived and thereafter seek to recover damages.

Accordingly, the court is prepared to enter an order for the amount sued for less the $2,000 in rent payments also claimed by the O'Neills and less the damage to the leased premises they claim. The court is satisfied from the evidence that Williams paid the $2,000 because of testimony of cancelled checks and, as to the damage, because Williams testified he did nothing to cause it and it was probably due to the actions of others. The amount should also account for the tax credit according to the evidence.