# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## MUNDY'S EXECUTORS V. GARLAND AND WIFE.

### November 12, 1914.

1. PLEADING—*Special Plea Under Section 3299 of Code—Rescission.*—While a special plea under section 3299 of the Code is not available as a defense to a bond for the purchase-price of real estate, if the defense is such as to require a rescission of the contract and a reinvestment of the vendor with the title to the property, the defenses set up in the special pleas filed in the case in judgment do not involve the rescission of the contract or a reinvestment of the title in the vendors. On the contrary, the vendee never acquired title to the property.

2. CONTRACTS—*Sale of Land—Ability of Vendor to Perform—Time of Performance.*—In order to recover for the breach of a contract by a vendee, the vendor must himself be able to keep and perform the contract on his part, but it is not necessary for him to be able to convey such title as he contracts to convey at the time he enters into the contract, but he must be able to do so when he is required by the terms of the contract to perform on his part.

3. CONTRACT FOR SALE OF LAND—*Tender of Price—Reasonable Time to Deliver Deed.*—Where a party, having a forty-day privilege to buy land at a stated price, tenders the price and demands a deed immediately, not having given any prior notice of his intention to take the land, the vendor is entitled to a reasonable time within which to deliver the deed.

4. CONTRACT FOR SALE OF LAND—*Right to Demand Recorded Title.*—Unless the contract for the sale of land requires a perfect *record title*, the purchaser, as a rule, is not entitled to demand such title, if the title is in fact good. If he could, a vendor who had acquired a perfect title by adversary possession, or under an unrecorded deed, could not enforce the provisions of his contract at law or in equity if the purchaser saw fit to resist on that ground.

5. VENDOR AND PURCHASER—*Objections to Title—Title of Vendor Good But Not Recorded.*—If the purchaser of land declines to accept the title of his vendor on grounds which are not valid, he can-

not thereafter defeat the recovery of the purchase price by his vendor on the ground that the *record* did *not show* that the vendor had a good title, when in fact he did have such title, and when the apparent defect in the title was not actually known to either party, and did not in any way affect their action.

6. Vendor and Purchaser—*Liens on Land—Satisfaction.*—Whether or not debts secured by a deed of trust on land sold by the vendor had been completely satisfied was a question for the jury upon all the evidence in the cause.

7. Evidence—*Admissibility—Harmless Error—Sufficiency of Advertisement of Land.*—A plaintiff having obtained an instruction from the court "that the only question as to the sufficiency of the advertisement was the good faith of the plaintiff in selecting the method in which it was made" is not prejudiced by the refusal of the court to hear evidence that the same land afterwards brought a less price at a public sale largely advertised.

8. Vendor and Purchaser—*Resale—Liability of Purchaser for Deficiency—Case at Bar.*—A purchaser of land at a fixed price agreed that it might be sold at public sale in forty days, and if it did not bring the price agreed he would pay the difference. The purchaser was given the option to take the land at any time before the sale upon payment of the price agreed and interest and the costs of advertising. The purchaser was not prevented from completing his purchase by any act or default on the part of the vendor and the land was sold at auction at the time agreed, and there was a deficiency.

*Held*:  The purchaser was bound for the deficiency.

Error to a judgment of the Circuit Court of Botetourt county in a proceeding by motion for judgment for money.  Judgment for the defendants.  Plaintiffs assign error.

*Reversed.*

This is the second time this case has been to this court. Upon the former writ of error the question involved was whether or not a motion under the provisions of section 3211 of the Code would lie upon the contract sued on in this case, and it was held that it would, reversing the judgment of the circuit court and remanding the case for further proceedings.

The litigation grows out of two agreements entered into, respectively, on the second and fourth of April, 1910, of which the following are copies:

"This agreement made between W. P. Mundy, A. H. Mundy and W. P. Barley, executors of the estate of James Mundy, deceased, parties of the first part, and J. L. Garland, party of the second part, Witnesseth: That the said parties of the first part have this day bargained and sold to J. L. Garland, party of the second part, the following property, namely: Roller mill, known as the Buchanan Roller Mills, formerly owned by H. M. Swartz, same having been recently purchased by James Mundy, together with all the real estate conveyed to said Mundy by H. M. Swartz about last of January, 1910.

"The said parties of the first part agree that there is to be no incumbrances on same, all taxes to be paid in full, including 1909. The said J. L. Garland is to pay taxes for 1910. The said party of the second part agrees to pay to said parties of the first part the sum of nine thousand, five hundred dollars ($9,500.00) cash in hand when warranty deed is made to said party of the second part by the parties of the first part.

"The said parties of the first part agree that there is to be no reservation in this deed except as concerning lease of J. E. Parger, the said J. L. Garland is to receive rents from April 1st."

"This contract made and entered into this 4th day of April, 1910, by and between W. P. Mundy and A. H. Mundy and W. P. Barley, executors of James Mundy, parties of the first part, and J. L. Garland and Mattie V. Garland, parties of the second part, Witnesseth: That whereas the said parties of the first part did on the 2nd day of April, 1910, enter into a contract of sale of the following property: "Roller Mill, known as the Buchanan Roller Mills, formerly owned by H. M. Swartz, same having been recently purchased by James Mundy, to-

gether with all the real estate conveyed to said James
Mundy by H. M. Swartz, about last of January, 1910,"
at the price of $9,500.00 cash on the delivery of a war-
ranty deed, by the parties of the first part, with the said
J. L. Garland, and whereas the said J. L. Garland de-
sires an extension of time within which to comply with
said sale and purchase by him of the property aforesaid.

"Now, therefore, this contract witnesseth that for and
in consideration of the premises, and in consideration
of the said Mattie V. Garland becoming a party with the
said J. L. Garland, hereto, and in the further considera-
tion of $1.00 cash in hand paid, the said parties to this
contract agree as follows:

"1st: That the said executors are to proceed to ad-
vertise said mill property to be sold at public auction in
such manner as to them may seem best on May 14, 1910,
on such terms as they may deem proper, and if at said
sale the said property described in the contract dated
April 2, 1910, and referred to in this contract, shall bring
less than $9,500.00, then in that event the said J. L. Gar-
land and Mattie V. Garland hereby agree to make up the
differences between price it may bring at the said pub-
lic sale and the said agreed price of $9,500.00 together
with 6 *per cent.* interest thereon from April 2, 1910, and
all costs and expenses incurred by said executors in and
about advertising said property and sale thereof. In
other words, the said J. L. and Mattie V. Garland hereby
agree to make up any deficiency in said purchase price at
said public sale so as to net the said executors $9,500.00,
with interest thereon from April 2, 1910.

"2nd: The said J. L. Garland is to have the privi-
lege at any time prior to day of public sale to pay the
said executors the said sum of $9,500.00 with 6 *per cent.*
interest thereon from April 2, 1910, also all costs and ex-
penses incurred by them in advertising said sale, and
receive the conveyance provided for in the contract of
April 2, 1910.

"3rd: The said executors shall likewise have the privilege of taking in said property at any time prior to day of said public sale and to release the said J. L. and Mattie V. Garland from this obligation to take and pay for said mill property, and all rights under this contract as to the said J. L. and Mattie V. Garland, shall thereupon cease and terminate.

"4th: If, at the said public sale of the said mill property, it shall sell for more than enough to pay the said sum of $9,500.00, with 6 *per cent.* interest thereon from April 2, 1910, and costs and expenses of said sale, the surplus thereof shall go to and become the property and be for the benefit of said executors."

On the 14th of May following, the said mill property was offered for sale and only brought the sum of $8,300. This proceeding was instituted to recover the difference between that sum and the agreed purchase of $9,500, together with interest thereon from April 2, 1910, and the costs incurred in advertising and selling the property.

Briefly stated the defenses relied on were in substance as follows: *First,* that the plaintiff executors had no authority to sell the mill property at the time they entered into the agreements of April 2 and April 4; *Second,* that the defendants were entitled under the said agreements to a conveyance of good title free from encumbrances, but that the plaintiffs did not have good title to one undivided third interest in the property until after May 14, 1910, and there were liens of record upon the property which the plaintiffs permitted to remain unpaid during the period in which the defendants had the right under said agreements to purchase; *Third,* that the sale provided for by the agreement of April 4, was not properly advertised; *Fourth,* that the agreement of April 4 was a mere option without consideration and not enforceable against the plaintiffs, as defendants were advised by counsel, and that they notified the plaintiffs.

before the 14th day of May that they declined to proceed
further with the said contract; *Fifth,* that before the
14th of May the defendants tendered the purchase price
as provided for in the agreement of April 4, which the
plaintiffs refused to receive and elected not to sell the
property.

The sixth and seventh clauses of the will of James
Mundy, the plaintiff's testator, provide as follows:

"Sixth: As soon after my death as practicable I de-
sire that all of my estate, both real and personal, shall
be appraised, and that my wife may select, at its ap-
praised value, so much of it, either real or personal, as
she desires to make up her third above bequeathed to
her. After my wife shall have made her selection the
remaining legatees and devisees above named shall select
for themselves as they may mutually agree from what
remains at the appraised value, to make up their re-
spective portions.

"Seventh: All the rest and residue of my estate, of
whatever nature, remaining after such portions shall
have been selected in kind, as above provided in the
sixth clause hereof, as soon as practicable shall be sold
by my executors hereinafter named, either publicly or
privately, and on such terms as to them shall seem to
the best interests of all concerned and the proceeds di-
vided amongst those entitled thereto hereunder."

After the parties had introduced and offered to intro-
duce evidence relied on to sustain their respective con-
tentions, the court was asked to give the following in-
structions by the plaintiffs:

"1. The court instructs the jury that if they believe
from the evidence that the defendants entered into the
contract of April 4, 1910, with the plaintiffs, and that J.
L. Garland did not exercise the option given him in said
contract to purchase the property therein described by an

offer of good faith to perform the contract of purchase on his part, and that he was not prevented from completing said contract of purchase by any act or default on the part of the plaintiffs, and that the plaintiffs made sale of said property at public auction on May 14, 1910, after advertising the sale in such manner as seemed to them best calculated to give notice of the sale to probable pro- spective bidders, and that said property, when sold by the plaintiffs on May 14, 1910, did not sell for an amount sufficient to pay the agreed price of $9,500.00 with inter- est thereon from April 2, 1910, and all costs and expenses incurred by the plaintiffs in the advertisement and sale of the said property, then the plaintiffs are entitled to recover the amount of the deficiency from the defendants.

"2.    The court instructs the jury that under the terms of the contract of April 4, 1910, the plaintiffs were given authority to advertise the sale to be made on May 14, 1910, in such manner as seemed best to them, and if the jury believe from the evidence that the plaintiffs, in advertising the property for sale, exercised their best judgment as to the manner of advertising the sale, and acted honestly in selecting the method of advertising the sale, then the defendants cannot complain of the manner adopted by the plaintiffs in advertising the sale, notwithstanding the fact that the jury may believe from the evidence that a different method of advertising the sale should have been adopted by the plaintiffs.

"The jury are further instructed that under the terms of the contract of April 4, 1910, the plaintiffs had the right to advertise and sell the property therein described for cash, and the defendants cannot complain that the sale made on May 14, 1910, was a cash sale.

"3.    The court instructs the jury that the fact that there may have been liens on or defects in the title to the property which the plaintiffs contracted to sell to J.

L. Garland, when the contracts of April 2, 1910, and April 4, 1910, were entered into, does not invalidate said contracts or relieve the defendants from the obligations imposed on them by the contract of April 4, 1910, unless the jury believe from the evidence that J. L. Garland was ready and willing to complete the purchase, and in good faith attempted to complete the purchase of the property he contracted to buy of the plaintiffs and was prevented from doing so by reason of the inability of the plaintiffs to convey him a good title to the property.

"4. If the jury believe from the evidence that J. L. Garland made an offer in good faith to pay the purchase money to one of the executors, and that said offer was coupled with a demand for an immediate delivery of a deed to the property, the jury are instructed that when said offer was made, the plaintiffs were entitled to have a reasonable time in which to deliver the deed conveying the property to J. L. Garland.

"The jury are further instructed that an offer by J. L. Garland to one of the three executors to pay the purchase money coupled with a demand for an immediate delivery of deed does not constitute an offer on the part of J. L. Garland to perform the contract of April 4, 1910, such as would release him from the obligations of said contract.

"5. The court instructs the jury that the vendor's lien retained in the deed of November 19, 1903, from Charles E. Smith and wife to H. M. Swartz was retained for the benefit and protection of Charles E. Smith alone, and that the release of said lien dated the 27th day of March, 1906, was a complete satisfaction and discharge of said lien.

"6. The court instructs the jury that if they believe from the evidence that the widow of Jas. Mundy united with his executors in a deed to J. L. Garland conveying

the mill property to him in compliance with the contract of sale and the said Garland was shown such a deed and advised that it would be delivered to him upon compliance by him with his contract of purchase, then any objections the said Garland could make to the title on account of the right of the widow to select the mill property under the will or to renounce the will were thereby removed.

"7.   The court instructs the jury that the executors of James Mundy had the right to bid on the property when sold under the terms of the contract of April 4, 1910, for the protection of the estate of James Mundy, and the fact that at the sale made on May 14, 1910, the property was purchased by O. T. Mundy for the benefit of said executors, does not invalidate the sale or of itself relieve the defendants from the obligations they assumed under the terms of said contract of April 4, 1910.

"8.   The court instructs the jury that if they believe from the evidence that at the time the contract of sale in controversy in this case was entered into the executors of James Mundy were possessed of a complete equitable title to the property they contracted to sell J. L. Garland, and had authority to sell the same, then the fact that objections to the title or encumbrances thereon, which could be removed, existed, does not invalidate the contract of sale.

"The jury are further instructed that if such objections to the title or such encumbrances existed which the said J. L. Garland desired to have removed before completing his purchase, it was his duty to notify the executors of the defects in the title which he desired to have removed, and give them a reasonable time to remove the same.

"9.   The court instructs the jury that it is for the jury to determine in view of all the circumstances sur-

rounding the contracts entered into between the parties to this suit, and the dealings and negotiations of the parties which took place after the said contracts were entered into, whose acts, conduct or default in reality prevented the sale from being completed.

"10. If the jury believe from the evidence that at the time the contracts of sale were entered into it was understood and agreed between the parties that the title to be conveyed to J. L. Garland should be free from substantial defects and that such steps would be taken by the executors as might be necessary to convey such a title to J. L. Garland, then the said Garland is not relieved from performing the contract of April 4, 1910, by the existence of any defects in the title which he had not pointed out to the executors and given them a reasonable time in which to remove the same, prior to the time that he demanded a deed and declined to be further bound by the contract.

"11. If the jury believe from the evidence that on account of the inability of J. L. Garland to raise the money to comply with his contract of purchase, that negotiations took place between him and the executors with a view of agreeing upon terms of payment different from the terms fixed by the written contract, then the executors are not bound to put themselves in a position to comply with their contract while said negotiations were going on, or until said Garland either notified them that he was in a position to comply by paying all cash or an agreement was reached as to the terms of payment different from the terms fixed by the contract, and the executors were then entitled to a reasonable time after such notice or after such agreement was reached in which to put themselves in a position to comply, and if said Garland offered to comply before such notice had been given or such agreement had been reached and the lapse of such rea-

sonable time thereafter and thereupon repudiated his contract of purchase and declined to be further bound by it, then his said offer to comply did not relieve the defendants from the obligations imposed on them by the contract of April 4, 1910.

"12. If the jury believe from the evidence that the defect in the title to the property purchased by J. L. Garland on account of the fact that the one-third interest which was conveyed by Rogers' executors to T. J. Smith was not vested in James Mundy's executors, was not known to J. L. Garland prior to the sale on the 14th of May, 1910, then the said Garland cannot rely on that defect as an excuse for his failure to comply with his contract of purchase and it does not relieve the defendants from the liability they assumed under the contract of April 4, 1910, to make up any deficiency in the purchase price.

"13. If the jury believe from the evidence that the existence of the lien in favor of the Rogers estate was known to J. L. Garland when the contract of purchase was entered into, and that negotiations took place with a view to Garland's assumption of said lien as a part of his purchase money, and that the understanding between him and the plaintiffs was that when Garland was ready to comply said lien would either be assumed by him or paid off by the executors as Garland might elect, then the failure of the plaintiffs to pay off said lien prior to April 20, 1910, does not excuse Garland's failure to comply with his contract of purchase, and does not relieve the defendants from liability under the contract of April 4, 1910."

The court gave instructions numbered 2, 4, 6, 7, 11 and 13, and refused to give the others; and upon motion of the defendants instructed the jury as follows:

"1. That the conveyance J. L. Garland was entitled

to receive was a conveyance of a perfect title, free from encumbrances.

"2.   That the deed from Rogers' exors. to T. J. Smith, C. E. Smith and C. B. Markham conveyed to each of the said parties one-third of the Pattonsburg Mill property; that the deed from C. B. Markham to T. J. Smith and C. E. Smith conveyed his share to these parties jointly, so that T. J. Smith and C. E. Smith each owned one-half of the said property. And the court further instructs the jury that the deed from T. J. Smith and wife to H. M. Swartz, dated March 18, 1904, only conveyed to H. M. Swartz the one-sixth interest that had been conveyed to T. J. Smith by C. B. Markham, which was one-half of the one-third interest that had been conveyed to C. B. Markham by Rogers' executors.

"3.   That if the jury believe from the evidence that James Mundy acquired this property from H. M. Swartz; that H. M. Swartz acquired the property from T. J. Smith and C. E. Smith; that in the deed of conveyance to H. M. Swartz he assumed the payment of all the debts for which C. E. Smith was liable as a member of the firm of T. J. Smith & Company, and that a lien was expressly reserved on the property to secure the payment of the said debts; that there were debts of said firm at the date of said deed on November 19, 1903, for which C. E. Smith was liable; then it was incumbent on the plaintiff to show, on or before May 14, 1910, that said debts had been paid.

"4.   That if the jury believe from the evidence that there were debts of the firm of T. J. Smith & Company, for which C. E. Smith was liable at the date of that deed on November 19, 1903, then the deed of March 27, 1906, from C. E. Smith does not release the lien of his creditors provided for them in the deed of November 19, 1903.

"5.   The court instructs the jury that the plaintiffs

did not have on May 14, 1910, the day agreed upon for the compliance of the contract of sale, a perfect legal title to the property, which was the kind of title they had contracted to give, and J. L. Garland was not required to accept the title they had, or offered, or to take the property, and the plaintiffs had no right to advertise and sell the property at his risk.

"6.   The court instructs the jury that the deed from Rogers' executors to T. J. Smith, C. E. Smith and C. B. Markham conveyed to each of the said parties one-third of the Pattonsburg Mill property; that the deed from C. B. Markham to T. J. Smith and C. E. Smith conveyed his share to them jointly; that is, to each a one-sixth of the said property; that the deed from T. J. Smith and wife to H. M. Swartz, dated March 18, 1904, only conveyed to H. M. Swartz the one-sixth interest in this property, which had been conveyed to T. J. Smith by C. B. Markham, and that T. J. Smith was still the owner of the one-third interest that had been conveyed to him by Rogers' executors so far as the record disclosed.

"7.   The court further instructs the jury that the defendants *was* entitled to receive from the plaintiffs a perfect legal title to the property under the contracts of April 2 and April 4, 1910, and if they believe from the evidence that the records of Botetourt county showed, on May 14, 1910, that T. J. Smith was the owner of a one-third interest in this property, then J. L. Garland was not required to accept the conveyance tendered him by plaintiffs or to take and pay for the said property, and that he had the right to refuse to comply with said contracts of April 2 and April 4, 1910, and is not liable to the plaintiffs for the deficiency in the price obtained for the said property at the sale of May 14, 1910, under the contract price of $9,500.00 as provided in the contract of April 4, 1910."

*Hall, Woods & Coxe, C. M. Lunsford* and *E. V. Barley,*
for the plaintiffs in error.

*Benjamin Haden,* for the defendants in error.

BUCHANAN, J., (after making the foregoing statement)
delivered the opinion of the court.

One of the errors assigned is the action of the court in
permitting the defendants to file special pleas of set off
under the provisions of section 3299 of the Code.   The
plaintiffs insist that to give the defendants the relief
sought by their pleas of set off a rescission of the con-
tract relied on was required, and that such rescission
cannot be had in a court of law.

It is well settled that a plea under that statute is not
available as a defense to a bond for the purchase price
of real estate, if the defense is such as to require a re-
scission of the contract and a reinvestment of the vendor
with the title to the property. *Mangus* v. *McClelland,*
93 Va. 786, 22 S. E. 364; *Tyson* v. *Williamson,* 96 Va.
636, 32 S. E. 42; 4 Minor's Inst. 796.   The defenses set
up in the special pleas filed in this case do not involve
the rescission of the contract sued on, or a reinvestment
of the title in the vendors.   On the contrary, the vendee
never acquired title to the property.   The only relief, if
any, which either party can have in this proceeding is
for the others' failure to keep and perform the agree-
ment sued on, and such relief does not depend upon its
rescission.

As the assignments of error based upon the action of
the court in overruling the other objections to the special
pleas involve largely the same questions raised by the
assignments of error to the court's action in giving and
refusing instructions and in rejecting evidence, the ques-

tions themselves will be considered without specific reference to the order, or the manner, in which they were raised.

The defendants insist that the plaintiffs were not entitled to recover upon the contract sued on because when it was entered into they did not have the right to sell the property contracted to be sold; that they did not have title to it and that there were encumbrances upon it, so that they were then unable to make such a conveyance as they contracted to make.

It is true that a vendor, in order to recover for the breach of a contract by the vendee, must himself be able to keep and perform the contract on his part; but as we understand the rule it is not necessary for him, in order to maintain an action for such breach, to be able to convey such title as he contracts to convey at the time he enters into the contract, but he must be able to do so when he is required by the terms of the contract to perform on his part.

The doctrine on this subject is thus stated in 39 Cyc. 1983, and is sustained by the decisions: "It follows from the general rule above stated that the vendor, in order to recover for a breach by the purchaser of the contract of purchase, must have been able to convey a good title, or such as would comply with the requirements of the contract; but it is not necessary that he should have good title at the time of the contract, but only that he should be able to convey a good title at the time of performance." See also *Daniel* v. *Leitch,* 13 Gratt. (54 Va.) 196, 213; *Goddin* v. *Vaughan,* 14 Gratt, (55 Va.) 102; *Conover* v. *Tindall,* 20 N. J. L. 513.

It appeared that between the 4th of April, 1910, the time when the parties entered into the contract sued on, and the 14th of May following, during which the defendant, Garland, had the privilege of becoming a purchaser

of the land, he made what was, or was intended to be, a tender of the amount required of him by that agreement in order to become the purchaser thereof, and demanded the immediate delivery of a deed conveying the property to him. This being the first notice to the executors that the defendant, Garland, intended to exercise his privilege or option and become the purchaser of the land, they were unable to comply with the demand of the said defendant for the immediate delivery of the deed. This tender by the said defendant, and the failure of the plaintiffs to deliver the deed at that time, the defendants claimed released them from all liability under the agreement sued on. This contention the court properly overruled by giving instruction No. 4 asked for by the plaintiffs.

It was further contended on the part of the defendants that the plaintiffs were not able at any time between April 4 and May 14, following, to convey the property free from encumbrance, or to convey good title to it, as they only had legal title to a two-thirds undivided interest therein, and were therefore not entitled to recover.

The court properly told the jury that the defendant, J. L. Garland was entitled under his contract to a conveyance of a good title free from encumbrance. See *Goddin* v. *Vaughan, supra,* 102, 117; *Kinney* v. *Hoffman,* 1 Va. Dec. 361. It further told them that the fact that they had good title must appear from the records of the office in which title papers are registered, or recorded.

The contract in this case did not require a perfect record title. Unless the contract does so require, the purchaser is not as a rule entitled to demand such title if the title is in fact good. If he could, the vendor who had acquired a perfect title by adversary possession, or under an unrecorded deed could not enforce the provisions of his contract, either at law or in equity, if the purchaser saw fit to resist on that ground.

Prof. Page in his article on Vendor and Purchaser, 39 Cyc. at page 1885, says, in discussing the defenses that may be made by a vendee: "In any case the defect of title must be such as to justify the purchaser in refusing to accept it; and if the contract does not require a perfect record title, the purchaser cannot justify a refusal to perform his part of the contract, that the title if, in fact, good, was not a perfect record title, nor is it any defense that the purchaser in refusing to accept a conveyance acted in good faith and upon the advice of counsel that the vendor's title was defective, if in fact such advice was erroneous." See also 1 Warville on Vendors, pp. 309-311; 26 Am. & Eng. Enc. L. (2nd ed.) 106-7, and cases cited in each; also *Cowdery* v. *Greenlee,* 126 Ga. 786, 55 S. E. 918, 919-20, 8 L. R. A. (N. S.) 137; Maupin on Marketable Titles, secs. 6 and 288.

To show that they had good title to the one-third undivided interest which the records did not show that their testator owned, they tendered an unrecorded deed, properly acknowledged for recordation, which showed in fact that said interest had been conveyed to and was owned by Swartz when he conveyed the property to the plaintiffs' testator, thus clothing him with the whole title. The court refused to permit the deed to go to the jury, upon the ground that it had not been recorded and that the defendants had no knowledge or notice of the existence of the deed on or before May 14, 1910, and instructed the jury that the plaintiffs did not have on May 14, 1910, the day agreed upon for the performance of the contract, a perfect legal title to the property; and that Mr. Garland "was not required to accept the title they had or offered, or to take the property, and the plaintiffs had no right to advertise and sell the property at his risk."

It seems to be conceded (if not, it clearly appears) that

neither the executors nor Mr. Garland actually knew
of the existence of the deed, or of the apparent defect in
the title as shown by the records, nor was such fact
known until some months after this proceeding was in-
stituted.   There is evidence tending to show that the
deed which the executors were having signed to deliver
to Mr. Garland, and also an abstract of title furnished
to the executors by their counsel, which showed that it
appeared from the records that there were certain en-
cumbrances on the land, which will hereinafter be ad-
verted to, were shown to Mr. Garland prior to the 19th of
April, 1910, when he claims that he elected to acquire the
property under the agreement sued on, tendered the con-
sideration to be paid and demanded an immediate de-
livery of the deed, and that he made no objection to the
title at either time, but declared the deal off because the
executors could not make an immediate delivery of the
deed; that he afterwards consulted counsel, who advised
him that the executors could not make a deed, and not
to accept their title.   The objections made were upon
other grounds, and if none of those grounds were valid
and such as prevented the executors from conveying a
good title free from encumbrances, the question is can
the defendants defeat a recovery upon the ground that
the record did not show that the plaintiffs had a good
title, when in fact they did, and when such apparent
defect in the title was not actually known to either party,
and did not in any way affect their action?

The court is of opinion that they cannot, and that the
circuit court erred in not permitting the said deed to go
to the jury.   If the deed had been admitted in evidence,
as it should have been, of course the court could not have
given the defendants' instructions numbered five, six and
seven, since they are based upon the same erroneous
view of the law, viz: that for the purposes of this case

the plaintiff could not be regarded as having good title unless that fact appeared of record.

The court is further of opinion that the construction placed upon the conveyances mentioned in instructions numbered two, three and four was correct, and that as to the incumbrance mentioned in instructions numbered three and four, the court properly told the jury that the burden was upon the plaintiffs to show that such encumbrance had been satisfied or released before the 14th of May, 1910, and that the release deed mentiond in instruction No. 4 did not show that the debt of the lien creditors secured by the deed of November 19, 1903, had been released.

The plaintiffs' instruction No. 5, in which the court was asked to tell the jury that said release deed was a complete satisfaction of the said debts, was erroneous and properly refused by the court. There was other evidence tending to show that the said debts had been satisfied. Whether or not they had was a question for the jury upon all the evidence in the cause.

In order to show that the sale of May 14 had been properly advertised, the plaintiffs offered to prove that the property sold for a less price in November following at a public sale largely advertised than it did on May 14. Whether the other conditions were the same or similar when the two sales were made does not appear. Unless they were it is clear that such evidence was not admissible and was properly excluded. But even if it had been admissible, no prejudice resulted to the plaintiffs, since the court, by instruction No. 2, offered by them, properly instructed the jury, in effect, that the only question as to the sufficiency of the advertisement was the good faith of the plaintiffs in selecting the method in which it was made.

The court is further of opinion that the plaintiffs'

instruction No. 1 correctly stated the law, and while it might have been better, perhaps, to have declared what acts or defaults on the part of the plaintiffs would have prevented the defendants from completing their purchase, its language could not have misled the jury, and the court erred in refusing to give it.

As the judgment will have to be reversed for reasons hereinbefore stated, the verdict set aside and the cause remanded for a new trial in which the evidence will not be the same, sufficient has been said without discussing the other assignments of error to indicate the general principles of law which should govern the court upon another trial.

The court is of opinion to reverse the judgment, set aside the verdict, and remand the cause for a new trial to be had not in conflict with this opinion.

*Reversed.*