## Richmond

## C. RAY WASKEY v. LEON H. THOMAS, ET AL.

June 10, 1977.
Record No. 760867.
Present: All the Justices.

*John B. Dinsmore (Byrd, Dinsmore, Evans and Bryant, Ltd.,* on brief), for appellant.

*Terrence K. Martin (Martin and Bensten,* on brief,), for appellees.

Case submitted on brief for appellant.

POFF, J., delivered the opinion of the Court.

On this appeal, we consider whether a vendee paying purchase installments under an executory contract for the sale of land is entitled to rescission of the contract and recovery of the installments paid when he learns that the land is held as a tenancy by the entireties and that one of the tenants failed to sign the contract.

There is no transcript of record, and we review the case upon an agreed statement of facts. C. Ray Waskey and his wife were owners as tenants by the entireties with the right of survivorship as at common law of a tract of farmland. Leon H. Thomas and Margaret E. Thomas, his wife, and Charlie M. Barfield were interested in buying a portion of the tract, and Waskey pointed out the boundaries of three adjacent lots he was willing to sell. Waskey's attorney prepared three sales contracts in which Waskey was identified as "owner" and the property was described by lot number "as shown on a preliminary plat of land of C. Ray Waskey attached hereto". The terms of sale fixed in the contracts were substantially identical: the purchasers agreed to make a cash deposit, part of which was to be used to finance a survey, and to pay equal monthly installments for 25 years; Waskey promised to deliver a general warranty deed upon payment of the full purchase price; and section 8 provided that

failure to cure a default in payment of an installment within 30 days after notice would entitle Waskey to "terminate this contract and retain all payments theretofore made by the purchaser as liquidated damages for the breach".

In November and December 1973, the three contracts were signed by Waskey and the purchasers, but not by Waskey's wife. Although a survey had not been conducted, the purchasers paid the deposit and all installments due through September 1974. Receiving no response to their several demands for plats, the purchasers withheld payment of the October installments. Waskey notified the purchasers by letter dated October 15, 1974 that the installments had not been received and assured them that the survey would be conducted the following week. On October 21, Waskey wrote another letter advising the purchasers that the survey had been completed, that plats would be mailed shortly, and that if the installments in default were not paid by November 15, he would exercise his right to rescind the contracts as provided in section 8.

The purchasers employed an attorney who wrote a letter on October 30 notifying Waskey that the contracts were rescinded on the grounds, *inter alia*, that the lots were not properly described in the contracts and that the land was held as a tenancy by the entireties and Mrs. Waskey had not entered into the contracts. On November 8, Waskey's attorney mailed the plats to the purchasers and advised them that Mrs. Waskey was prepared to sign the contracts if requested to do so.

The purchasers then filed three bills of complaint which were consolidated for trial. The purchasers alleged that Waskey "fraudulently induced [them] to sign the [contracts] . . . by falsely representing . . . that he was the owner" and asked the chancellor to declare the contracts rescinded and order repayment of the installments with interest. Finding that "the property . . . was held by the defendant and his wife as tenants by the entireties and that the defendant's wife had not signed said contracts prior to notice of rescission by complainants' counsel and that, as a result said contracts are void, unenforceable and rescinded", the chancellor entered a decree in the consolidated cases on May 14, 1976, *nunc pro tunc* April 1, 1976, granting the relief prayed.

■ In support of his position that the purchasers had no right to rescind and that he is entitled to enforce the stipulated damages clause of the contracts, Waskey, who did not appear on oral argument, relies on brief upon the rule applied in *Mundy* v. *Garland*, 116 Va. 922, 936, 83 S.E. 491, 495 (1914), cited with approval in *Jennings* v. *Realty Developers, Inc.*, 210 Va. 476, 479-80, 171 S.E.2d 829, 832 (1970). That rule holds that the fact that a vendor in a contract for the sale of land did not have the capacity to convey good title on the date of the contract does not invalidate the contract or affect the vendor's right to damages for breach if he has acquired capacity to convey good title on the date fixed for delivery of the deed.

While the rule in such cases in England and Canada is somewhat less favorable to the vendor, *see, e.g., Forrer* v. *Nash*, 35 Beav. 167, 171 (M. R. 1865), and *Smith* v. *Crawford*, 11 Sask. L.R. 170, 40 D.L.R. 224 (1918), the rule in *Mundy* is recognized as the general rule in this country.

However, where the contract calls for purchase by installment payments and delivery of the deed upon final payment, and the vendor has misrepresented his capacity to convey what he has contracted to convey, or concealed defects in the title, the general rule is subject to exception.

"[A] requirement in a contract of sale that installments of the purchase price be paid before the 'law day' — the time fixed for delivery of the deed — creates independent obligations, and timely payment of the installments must be made regardless of the existence of objectionable encumbrances.... [A] purchaser may *generally* not recover his down payment or damages on ground of unmarketability of title prior to the time provided for delivery of the deed. . . ."

"There are some exceptions to this rule. An exception is made in the case of misrepresentation of the title by the seller, particularly if the encumbrances revealed are relatively substantial, or if the seller is wholly lacking in title. A distinction is drawn between the implied promise that a marketable title will be conveyed in the future and a breach of a *representation or warranty that certain facts exist presently*. In case of a breach of the latter, the purchaser is not obligated to continue with his performance on the assumption the breach will be remedied. (Footnotes omitted) (Emphasis

added ı." M. Friedman, *Contracts and Conveyances of Real Property* § 4.8(h) at 311-13 (3d ed. 1975).

*See also* 57 A.L.R. *Marketable Title* 1253, 1515 *et seq.*

██ We are of opinion that the case at bar falls within the exception to the general rule and that the purchasers had the right to rescind the contracts. Waskey's act in preparing and signing the contracts in which he identified himself as "owner" constituted "a representation or warranty that certain facts exist presently", *i.e.*, that he had the present capacity to convey what he bargained to sell. As Waskey knew, or should have known, he had no such capacity.[1] This representation induced the purchasers to enter into the contracts and to begin paying the purchase installments. The purchasers performed their obligations faithfully and rescinded the contracts only after they learned that they had been misled, that they had no equitable remedy to compel Waskey to deliver what he had no capacity to deliver, and that they had no remedy, equitable or legal, against Mrs. Waskey.[2]

██ Waskey not only had no present capacity to convey but also had no legal power to attain the capacity to convey before the date fixed for delivery of the deed. It is true that Waskey might have been enabled by some future eventuality to attain such capacity. For example, he might have been able to acquire full title by right of survivorship or by deed executed by himself and his wife. Code § 55-9 (Repl. Vol. 1974). It is possible, too, that if Mrs. Waskey remained of the same mind as she was on the date of trial, she might have been willing when the last installments were paid to join in her husband's deeds to the purchasers. It is also possible, however, that none of these eventualities would have occurred or, alternatively, that Waskey might have predeceased his wife before that time. In such case, the purchasers, wholly without equitable remedy for specific performance, would have been left with no recourse but an

---

[1] While a single tenant by the entireties is not, in the language of the exception, "wholly lacking in title", he has no capacity to convey title to the estate, in whole or in part, to a third party. *Vasilion* v. *Vasilion,* 192 Va. 735, 66 S.E.2d 599 (1951).

[2] In response to the purchasers' notice of rescission, Mrs. Waskey advised them that she was willing to "execute such assurances of title" as they might require. If this was a promise, it was without consideration and was, therefore, unenforceable by the purchasers.

action for damages against Waskey or his estate. *See Ingram* v. *Lunsford*, 216 Va. 785, 224 S.E.2d 129 (1976).

██ We conclude that, but for Waskey's representation that he had the present capacity to convey good title, the purchasers would not have entered into these contracts. The purchasers were bargaining for title to land, an asset the law has always accorded unique value. Just as a court of law will not allow a husband to escape his liability for damages for breach of a contract to sell land held as a tenancy by the entireties on the ground that his wife did not sign the contract, *Ingram* v. *Lunsford, supra,* a court of equity may, in the sound exercise of its discretion, uphold rescission of a contract which, on the one hand, enables a husband to avoid his promise to convey good title on the ground that his wife did not sign the contract, and, on the other hand, awards him stipulated damages if the vendee, learning that the vendor's promise is unenforceable, rescinds the contract.

Finding no error, we will affirm the final decree.

*Affirmed.*