**Richmond**

RAY L. WRIGHT, ET AL.

V.

JAMES P. BRYAN, ET AL.

Record No. 810792.

January 20, 1984.

Present: Carrico, C.J., Cochran, Poff, Compton, Russell and Thomas, JJ., and Gordon, Retired Justice.

*William T. Wilson; D. Thomas Blair (William T. Wilson & Associates,* on briefs), for appellants.

*Michael McHale Collins (J. Gregory Mooney; Collins & Singleton,* on brief), for appellees.

COMPTON, J., delivered the opinion of the Court.

This is an appeal of an action at law for damages arising from a contract for the sale of real estate. The property was owned by husband and wife as tenants by the entireties with the right of survivorship. The sole question is whether the contract is void because only the husband executed the agreement.

On September 16, 1979, appellant Ray L. Wright by written contract agreed to sell to appellees James P. Bryan and Dorothy B. Bryan, his wife, a house and lot in Alleghany County for $67,000. The form contract was executed by Wright, as "Seller," by Mr. Bryan, and by Don F. Gross, agent for the realtor, appellant Virginia Real Estate. Lois B. Wright, wife of the seller, did not sign the agreement.

The contract provided for settlement on or before November 19, 1979. Pursuant to the agreement, Bryan remitted to the realtor $3,350 as "deposit with contract." The agreement specified that the balance of the purchase price was to be paid in "cash on delivery of deed." In addition, the document provided that the purchasers were to have early possession "on a rental basis" at the rate of $400 per month, to be paid in advance and credited toward the purchase price.

Bryan paid rent for only one month, September 16 to October 16. Approximately one week before the scheduled closing, Bryan advised Wright that he had been discharged from his employment at a local hospital, that "there was no work in this area for him," and that "he wanted to compromise this contract." Wright responded that he "had a signed contract" and that he was ready to deliver the deed at closing. Bryan left the area the day after the conversation.

On November 13 and 27, the Bryans' attorney wrote Gross, advising that the contract was "unenforceable" and demanding return of the sum of $3,350 held in escrow. In a December 3 letter to the Bryans' attorney, Wright stated that the Bryans were one month in arrears in rent, that Gross had earned his six percent sales commission of $4,020, and that the Bryans thus owed a balance of $1,070. The contract provided: "If either Purchaser or Seller defaults under such Contract, such defaulting party shall be liable for the cash fee of Realtor and any expenses incurred by the non-defaulting party in connection with this transaction." Noting that Bryan "tried to sell this property to another party the night before he left town," Wright stated the Bryans could save "these expenses" should they be able to sell the property before December 15 "as I will hold my part of the contract open until that date." There was no sale or closing by December 15 and, on January 7, 1980, Gross paid Wright the sum held in escrow, "minus percentage."

On May 23, 1980, the Bryans filed a warrant in debt against Wright and Virginia Real Estate in the general district court. The warrant alleged that $3,550 was due "for refund of deposit paid on void sales contract." The defendants removed the proceeding to the circuit court in June. In November, the Wrights sold the property for $68,000 to third parties.

Five days before the case was heard on December 12 by the trial court sitting without a jury, defendants filed a counterclaim for $1,401.50 seeking recovery of the balance of the realtor's commission, one month's rent, attorney's fees and costs. The counterclaim was severed, continued, and is still pending.

Following the trial and submission of briefs, the court below in a written opinion ruled in favor of the Bryans, holding the case was controlled by the decision in *Waskey* v. *Thomas*, 218 Va. 109, 235 S.E.2d 346 (1977). On February 16, 1981, judgment was entered for $3,350 against Wright only. Both defendants filed a petition for appeal, which was granted.

The purchasers argue that the contract "was unquestionably void" for lack of mutuality. Therefore, they say, the parties should be returned to the positions they held prior to execution of the agreement. Thus, they contend, the trial court correctly ruled that the "deposit money" should be returned to them.

Elaborating on the mutuality argument, the purchasers argue that "neither side could compel the other to perform." They argue that the "nature of the tenancy by the entireties made the signature of Louise [sic] B. Wright a prerequisite to any effort by Bryan to compel specific performance." They contend "the fact that Wright could not be compelled to convey the property in question precluded any attempt by him to compel Bryan to perform."

Wright and the realtor contend the trial court erroneously applied the rule of *Waskey* to the facts of this case. They contend the contract was not void, did not lack mutuality, and that the purchasers breached the contract. We agree.

The general rule is that a contract for the sale of real estate is not void merely because the vendor does not have the capacity to convey good title at the time of contracting, provided the vendor acquires such capacity by the time fixed for his performance. *Mundy* v. *Garland*, 116 Va. 922, 936, 83 S.E. 491, 495 (1914). *Accord Waskey* v. *Thomas*, 218 Va. at 112, 235 S.E.2d at

348; *Jennings v. Realty Developers, Inc.*, 210 Va. 476, 479-80, 171 S.E.2d 829, 832 (1970).

■ "However, where the contract calls for purchase by installment payments and delivery of the deed upon final payment, and the vendor has misrepresented his capacity to convey what he has contracted to convey, or concealed defects in the title, the general rule is subject to exception." *Waskey v. Thomas*, 218 Va. at 112, 235 S.E.2d at 348. If the *Waskey* circumstances exist, the exception applies and the purchasers have the right to rescind in advance of the time for performance.

■ In this case, the primary requirement of the *Waskey* exception is lacking; this was not a purchase by installments with the deed to be delivered upon final payment. Rather, this was a routine real estate sales transaction; there was an advance payment binding the parties which was to be applied to the purchase price upon the settlement date, fixed within a reasonable time. Accordingly, the general rule, not the *Waskey* exception, controls. The contract, therefore, was not void.

■ Furthermore, the contract did not lack mutuality merely because the seller's wife did not sign it. *See Jennings v. Realty Developers, Inc.*, 210 Va. at 479-80, 171 S.E.2d at 832. The document was in valid form, was dated, bore the signature of one of the purchasers, and was executed on behalf of the realtor by one of its agents. The property was accurately identified. The seller agreed to convey; the purchaser agreed to buy and pay for the property. The consideration was specified. The manner of payment was set forth. After the parties executed the contract, they had only to perform their promises. If either party failed to do so, this would have constituted a breach rendering the defaulting party liable to the other.

Certainly, specific performance was foreclosed, due to the nature of a tenancy by the entirety, because the seller's wife did not sign the contract. *See generally, Vasilion v. Vasilion*, 192 Va. 735, 740-43, 66 S.E.2d 599, 602-04 (1951). But even though the contract cannot be so enforced and is void so far as it purports to affect the wife's title to the property, it nevertheless retains its "validity between the parties as a foundation for an action at law to recover damages for breach of contract." *Ingram v. Lunsford*, 216 Va. 785, 786, 224 S.E.2d 129, 130 (1976).

■ Accordingly, because the purchaser failed to carry out his promise to perform the contract, his conduct amounted to a repu-

diation of the agreement in advance of the date when the seller was required to perform. The purchaser, not the seller, defaulted. Consequently, the purchaser is liable under the contract for the "cash fee of the Realtor and any expenses of the non-defaulting party in connection with this transaction."

Therefore, we will reverse the judgment in favor of the purchasers, enter final judgment here on the main claim for the seller and the realtor, and remand the case for further proceedings on the counterclaim.

*Reversed, final judgment, and remanded.*

RUSSELL, J., dissenting.

The trial court gave careful consideration to the general rule stated in *Waskey* v. *Thomas*, 218 Va. 109, 235 S.E.2d 346 (1977), but noted that here, as in *Waskey*, the seller lacked the legal means to obtain the title he had promised to convey. The general rule was applied in *Mundy* v. *Garland*, 116 Va. 922, 936, 83 S.E. 491, 495 (1914), and again followed in *Jennings* v. *Realty Developers, Inc.*, 210 Va. 476, 479-80, 171 S.E.2d 829, 832 (1970), but it is worthy of note that in each of those cases the seller had the legal means to compel the acquisition of good title, and thus to enable himself to perform his contractual obligation. In *Waskey*, we considered facts similar to those now before us, and held that the purchaser had the right to rescind.

The decision in *Waskey* did not, it seems to me, carve out a narrow exception limited solely to installment contracts. There, as in the case at bar, title to the land to be sold was vested in a husband and wife as tenants by the entireties. There, as here, only the husband signed the contract of sale. Affirming the trial court's decree of rescission, we said:

Waskey not only had no present capacity to convey but also had no legal power to attain the capacity to convey before the date fixed for delivery of the deed. It is true that Waskey might have been enabled by some future eventuality to attain such capacity. For example, he might have been able to acquire full title by right of survivorship or by deed executed by himself and his wife. Code § 55-9 (Repl. Vol. 1974). It is possible, too, that if Mrs. Waskey remained of

the same mind as she was on the date of trial, she might have been willing when the last installments were paid to join in her husband's deeds to the purchasers. It is also possible, however, that none of these eventualities would have occurred or, alternatively, that Waskey might have predeceased his wife before that time. In such case, the purchasers, wholly without equitable remedy for specific performance, would have been left with no recourse but an action for damages against Waskey or his estate. *See Ingram* v. *Lunsford,* 216 Va. 785, 224 S.E.2d 129 (1976).

We conclude that, but for Waskey's representation that he had the present capacity to convey good title, the purchasers would not have entered into these contracts. The purchasers were bargaining for title to land, an asset the law has always accorded unique value. Just as a court of law will not allow a husband to escape his liability for damages for breach of a contract to sell land held as a tenancy by the entireties on the ground that his wife did not sign the contract, *Ingram* v. *Lunsford, supra,* a court of equity may, in the sound exercise of its discretion, uphold rescission of a contract which, on the one hand, enables a husband to avoid his promise to convey good title on the ground that his wife did not sign the contract, and, on the other hand, awards him stipulated damages if the vendee, learning that the vendor's promise is unenforceable, rescinds the contract.

*Waskey,* 218 Va. at 113-14, 235 S.E.2d at 349. The foregoing language leads me to conclude that in *Waskey,* the Court's reasoning depended not upon the nature of an installment contract, but upon the fact that the seller lacked the capacity to do as he had promised, and had no legal means of acquiring that capacity. As in the case before us, the seller's ability to perform was conditioned upon the will of a stranger to the contract, not subject to his legal control.

This principle is hardly new. We noted, as early as *Goddin* v. *Vaughn's ex'x & als.,* 55 Va. (14 Gratt.) 102, 118 (1858), that a purchaser who discovers before settlement that the title he was to receive was not such as the seller had contracted to convey to him, would be justified in refusing to proceed further with the contract.

The foregoing authorities make it clear that where a husband alone has signed a contract to sell land which he and his wife own

as tenants by the entireties, the purchaser is entitled to rescission in equity. *Ingram* v. *Lunsford*, 216 Va. 785, 224 S.E.2d 129 (1976), holds that the purchaser, in such circumstances, may have an action at law for breach of contract against the husband, based upon his inability to perform. In my view, reason and logic dictate that the purchaser should have the further option of repudiating the unenforceable contract and recovering his deposit in an action at law. I would, accordingly, affirm the judgment of the trial court.

CARRICO, C.J., joins in dissent.