Present:  All the Justices

G & M HOMES II, INC.

v.  Record No. 010423

SHIRLEY V. PEARSON, ET AL.

OPINION BY JUSTICE CYNTHIA D. KINSER
January 11, 2002

G & M HOMES II, INC.

v.  Record No. 010605

SHIRLEY V. PEARSON, ET AL.

FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Joanne F. Alper, Judge Designate

In this appeal, the dispositive issue is whether a contract for sale of real property is valid and binding absent the signature of one of the parties identified therein as a seller. Because we conclude that the contract is incomplete and not enforceable, we will affirm the judgment of the circuit court in favor of the defendants-appellees.

FACTS AND MATERIAL PROCEEDINGS

The real property at issue in this appeal consists of nine lots in the "Division of the Land of C. Herbert and Shirley V. Pearson" located in Loudoun County.  The property had been owned by Shirley V. Pearson (Pearson), and her husband, C. Herbert Pearson, as tenants in common, until Mr. Pearson's death on

November 7, 1998.[1]  In the residuary clause of his last will and testament, Mr. Pearson devised his real estate to his wife. However, Pearson signed a disclaimer with respect to the nine lots.[2]  The effect of the disclaimer, if valid, would be to allow Mr. Pearson's interest in that real estate to pass to the Pearsons' daughter, Herta Ann Pearson Gould (Gould).[3]  Pearson executed the disclaimer on July 15, 1999, but did not record it in the land records of Loudoun County until August 6, 1999.

On the same day that she executed the disclaimer, Pearson also entered into a contract to sell the nine lots at issue to G & M Homes II, Inc. (G & M Homes).  Earlier, on June 9, 1999,

---

[1] The Pearsons initially held the property as tenants by the entirety with the right of survivorship, but they conveyed it to themselves as tenants in common by deed dated March 13, 1985.

[2] In the disclaimer, Pearson stated that, pursuant to Code § 64.1-191, she "decline[d] to accept any beneficial interest in or through [her] husband's half of certain jointly owned real property in Loudoun County, Virginia, described on the attachment hereto [listing the nine lots at issue], with respect to which I am surviving joint tenant by the entirety."  She further stated that, pursuant to Code § 64.1-188, she disclaimed the property "[t]o the extent that, by operation of law, [she] might stand to inherit the aforesaid property pursuant to Article II(A) of the will of C. Herbert Pearson [the residuary clause]."  Whether it was necessary for Pearson to disclaim under both of those statutory provisions is not an issue in this appeal.  However, as already noted, the Pearsons owned the subject property as tenants in common at the time of Mr. Pearson's death.

[3] Mr. Pearson devised his real estate in Loudoun County to Gould in the event that Pearson did not survive him.  Under Code § 64.1-190(A), disclaimed property descends as if the

2

Pearson had signed a letter of intent providing for G & M Homes' purchase of ten lots, with the provision that Pearson could elect to remove one lot from the contract before July 15, 1999.

The pertinent provisions of the contract of sale deal with the identity of the seller and the statement that the identified seller owns the subject property:

> THIS contract made and entered into this 15th day of July, 1999, by and between SHIRLEY V. PEARSON and HERTA ANN GOULD, herein referred to as "Seller," and G & M HOMES II, INC., a Virginia corporation, herein referred to as "Purchaser," provides that:

> WHEREAS, the Seller is the owner of nine (9) certain parcels of real estate in Loudoun County, Virginia, more particularly described as Lots 1A, 1B, 2, 3, 5, 7B, 8, 9, and 10, Division of the Land of C. Herbert and Shirley V. Pearson[.]

The last page of the contract contains two signature lines for the "Seller" and one signature line for the "Purchaser." However, only Pearson and G & M Homes executed the contract; Gould never signed it.

Between July 15 and September 2, 1999, additional negotiations took place between the parties, including the preparation of at least one addendum to the contract of sale. However, in a letter dated September 2, 1999, an attorney representing Pearson and Gould advised G & M Homes that "my clients are not going forward in this matter" and returned G & M

_____

disclaimant predeceased the decedent. A disclaimer relates back to the date of death of the decedent. Code § 64.1-190(B).

Homes' deposit check.  Subsequent to September 2, G & M Homes made another offer to purchase the property, which included a $40,000 option deposit check payable to Pearson and Gould. Again, the attorney for Pearson and Gould advised G & M Homes that Gould had given explicit instructions to reject the most recent offer and to return the check.

Because the sale of the property to G & M Homes was never consummated, G & M Homes filed a bill of complaint against Pearson and Gould, seeking specific performance of the contract of sale, damages for breach of contract, and declaratory judgment that the contract is valid and binding "to the full extent of the interest in the property owned by" Pearson.[4] Cross-motions for summary judgment were filed by G & M Homes, as well as Pearson and Gould.  G & M Homes claimed that it was entitled to specific performance of the contract of sale both as to Pearson's one-half interest in the property and the one-half interest devised to her by Mr. Pearson.  In contrast, Pearson and Gould asserted that the contract was incomplete and thus invalid.

The circuit court granted the defendants' motion for summary judgment with respect to G & M Homes' claim for specific performance.  The court subsequently directed G & M Homes to

4

elect to proceed on only one of its two remaining counts in the bill of complaint:  breach of contract or declaratory relief. G & M Homes decided to proceed on its claim for declaratory relief.

After hearing testimony and reviewing relevant documents regarding that claim, the circuit court granted the defendants' motion to strike the evidence and found, as a matter of law, that Pearson had sole record title to the subject property as of July 15, 1999, and that the contract of sale signed on that date was not valid and binding on Pearson and G & M Homes because of the absence of the signature of Gould, a party to the contract. The court subsequently entered a decree incorporating its reasons stated from the bench and memorializing its ruling. G & M Homes appeals from that decree.

ANALYSIS

The dispositive issue in this appeal concerns the validity of the contract for sale.  G & M Homes contends that the contract is complete and enforceable without Gould's signature. Relying on Code § 64.1-194, G & M Homes asserts that Pearson's right to disclaim succession to her husband's one-half interest in the property was barred because she exercised control over that interest by executing the letter of intent and the contract

_____

[4] G & M Homes also named the trustee under a credit line deed of trust as a party defendant.  The trustee filed an answer

5

of sale prior to filing the disclaimer.[5]  Thus, G & M Homes

maintains that Pearson owned both of the two moieties of the

property when she signed the contract of sale and that,

therefore, Gould's name on the contract of sale is mere

surplusage.

In the alternative, G & M Homes argues that, if Pearson's

disclaimer is effective and Gould owns her father's one-half

interest, the contract is, nevertheless, valid and binding as to

Pearson's one-half interest in the property.  Relying on this

Court's decision in Wright v. Bryan, 226 Va. 557, 311 S.E.2d 776

(1984), G & M Homes contends that the absence of Gould's

signature does not affect the validity of the contract as

between Pearson and G & M Homes.  Thus, G & M Homes posits that

it is at least entitled to specific performance of the contract

as to Pearson's one-half interest, or declaratory judgment that

the contract is binding and enforceable as to Pearson.

In response, Pearson and Gould assert that the contract

lacks the signature of a necessary party and, thus, is not

_____

but has not participated further in this suit.

[5] Code § 64.1-194 places a restriction upon the right to disclaim by specifying, in pertinent part, that "[a]ny . . . assignment, conveyance, encumbrance, pledge or transfer of property or interest therein or contract therefor . . . made before the expiration of the period in which the disclaimant may disclaim . . . bars the right to disclaim as to the property or interest."

complete or binding as to any of the parties. In support of their position, Pearson and Gould point out that the language and form of the contract of sale demonstrate that Pearson and Gould, as a single unit, were to be the seller. We agree with Pearson and Gould.

First, our decision in Wright is distinguishable. G & M Homes asserts on brief that the real estate purchase contract at issue in that case mirrored the one at issue in this appeal. G & M Homes is wrong. Contrary to its assertion, the contract in Wright did not list both the husband and wife as the "Seller." Instead, only the husband, Ray L. Wright, was referred to as the "Seller."[6] His wife's name did not appear anywhere in the contract, and only the husband executed it. Wright, 226 Va. at 558, 311 S.E.2d at 777. Thus, we concluded that the contract did not lack mutuality merely because the seller's wife had not executed it, and that it remained valid between the executing parties and could be the foundation of an action at law for breach of contract. Id. at 561, 311 S.E.2d at 778. However, the absence of the wife's signature precluded specific performance of the contract because the property at

---

[6] This fact is not necessarily evident from our opinion in that case. However, an examination of the contract itself, included in the joint appendix, pp. 12-13, filed with the appeal in that case, does show that only the husband was named as the "Seller." On brief, G & M Homes referenced that appendix but apparently looked at the wrong contract.

7

issue was held by the husband and wife as tenants by the entireties.  Id.

In contrast to the contract in Wright, the contract of sale at issue here identifies Pearson and Gould, collectively, as the "Seller."  The singular term "Seller" is consistently used throughout the contract.  Notably, paragraph 20(A) contains a warranty that the "Seller is the sole fee simple owner of the Property."  Finally, on the last page of the contract, two signature lines are located under the caption "SELLER."  This language and form of the contract of sale indicate that Gould's signature was understood by the parties as necessary in order to have a complete and binding contract as to any party.  Cf. Marks v. Williams, 222 Va. 40, 44, 278 S.E.2d 806, 808 (1981) (the absence of a signature line for the seller's wife "indicates that the wife's agreement was not a precondition of the contract").

The use of the term "Seller" throughout the contract of sale to identify both Pearson and Gould is consistent with Pearson's execution of the disclaimer on the same day that she entered into the contract of sale.  However, a determination as to whether Gould acquired an interest in the property by virtue of that instrument, either when Pearson signed it or when she recorded the disclaimer, or by some other means, is immaterial to our analysis.  It is of no consequence whether Pearson was

8

the sole owner of the property when she signed the contract of sale on July 15, 1999, because we have held that an individual may contract to sell that which she does not own at the time of contracting so long as she is able to convey good title when required to do so by the terms of the contract.  See, e.g., T. Nevil Ingram, Inc. v. Lunsford, 216 Va. 785, 786, 224 S.E.2d 129, 130 (1976); Jennings v. Realty Developers, Inc., 210 Va. 476, 479-80, 171 S.E.2d 829, 832 (1970); Spruill v. Shirley, 182 Va. 342, 348, 28 S.E.2d 705, 708 (1944).  Therefore, Gould could contract to sell the property at issue, and contractual language identifying Gould, with Pearson, as the "Seller" cannot be dismissed as mere surplusage.

Although we base our decision on the language of the contract, additional facts of record in this case demonstrate that G & M Homes understood that it was contracting with both Pearson and Gould for the purchase of the property.  This knowledge on the part of G & M Homes is evidenced by its option deposit check made payable to both Pearson and Gould and by the negotiations between the parties that occurred after July 15, 1999, in G & M Homes' attempt to obtain Gould's signature on the contract of sale.  In fact, during those continued negotiations, G & M Homes executed at least one addendum to the contract. That addendum, like the original contract, referred to Pearson and Gould as the "Seller."

9

In support of its motion for summary judgment before the trial court, G & M Homes also included Pearson's response to a question in its second set of interrogatories. That response further demonstrates the scope of G & M Homes' knowledge with regard to the identity of the "Seller":

> I, Shirley V. Pearson, could not execute that Contract of Sale, or go to closing, alone. Both my daughter and I were required to sign and to close. This is made clear on the face of the contract, and by the course of negotiations before and after July 15, 1999. All parties, and their agents, including Eric V. Zimmerman, Susan Rutherford and Jim Brooks knew that Herta Ann Gould's consent was required. They knew of my intent to disclaim a portion of the property (I had decided to do so on or before May 17, 1999) and knew that such a disclaimer would be drafted, signed and recorded. This, I believe, is why Mr. Grimm failed to take a copy of the contract we signed on July 15 with him – he knew it was not valid and enforceable until it was reviewed and signed by my daughter, whom he knew was vacationing in Maine at the time. This is why Mr. Grimm provided earnest money checks made payable to me and my daughter. This is why Mr. Grimm continued to negotiate with my daughter to gain her consent after July 15, 1999 and indeed, well after the disclaimer I signed on July 15 was recorded. This is also why Mr. Grimm's agent, Susan Rutherford, phoned me in early September to recommend a prospective purchaser other than her own principal, Mr. Grimm. This is why Mr. Grimm never suggested that Herta Ann Gould was not a necessary party to the sale until this suit was filed. This suit is completely contrived and belies the clear intent of the parties before and after July 15, 1999.

The circumstances in the present case are analogous to the facts in Raney v. Barnes Lumber Corp., 195 Va. 956, 81 S.E.2d 578 (1954). There, a lumber company sought specific performance of an alleged contract to sell timber lands owned by a mother and her son. Id. at 957, 81 S.E.2d at 580. We concluded that

10

there was no evidence that the son had ever signed any document that demonstrated his agreement to convey his one-half interest in the property and that he had not, either expressly or implicitly, authorized anyone else to agree to the sale on his behalf. Id. at 966, 81 S.E.2d at 585. Nevertheless, the lumber company insisted that it was entitled to specific performance with regard to the mother's one-half interest since she had agreed to the proposed sale. This Court disagreed and observed that there was "not a word in the mass of correspondence between the parties which would indicate that either the [lumber company] or [the mother] ever had in contemplation dealing as to a one-half interest." Id. at 969-70, 81 S.E.2d at 586. We reach the same conclusion in the present case.

As we have already stated, Pearson and Gould were, as a unit rather than separately, identified as the "Seller." The contract included two lines at the end for the signatures of the "Seller." However, the "Seller" did not execute the contract because Gould failed to sign it. Thus, the contract was never consummated. See C. & O. Ry. Co. v. Douthat, 176 Va. 244, 252-53, 10 S.E.2d 881, 884-85 (1940) (contract naming husband and wife as "parties of the first part" never consummated because wife did not sign it).

That fact was evident to G & M Homes. The continued communications and negotiations between the parties after

11

Pearson signed the contract of sale demonstrate that G & M Homes understood that it was contracting with both parties and that it did not yet have a complete and binding contract.

CONCLUSION

For these reasons, we conclude that the circuit court did not err in granting summary judgment for Pearson and Gould with regard to G & M Homes' claim for specific performance. We further conclude that the court did not err in finding, as a matter of law, that the contract of sale is not valid and binding between Pearson and G & M Homes. Accordingly, we will affirm the judgment of the circuit court.[7]

Affirmed.

---

[7] In light of our decision, we do not need to address the remaining assignments of error and, for that reason, have not included in this opinion discussion of certain facts and proceedings relevant only to those assignments of error.